## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

MICHAEL E. SPREADBURY,                    CV 11-64-M-DWM-JCL

        Plaintiff,

     vs.                                         FINDINGS AND
                                          RECOMMENDATIONS
BITTERROOT PUBLIC LIBRARY,
CITY OF HAMILTON,
LEE ENTERPRISES, INC.,
BOONE KARLBERG, P.C.,
DR. ROBERT BROPHY, TRISTA SMITH,
NANSU RODDY, JERRY STEELE,
STEVE SNAVELY, STEVEN BRUNER-MURPHY,
RYAN OSTER, KENNETH S. BELL, and JENNIFER LINT,

        Defendants.

_____

Before the Court is Defendant Lee Enterprises, Inc.'s Fed. R. Civ. P. 56

motion for summary judgment upon Plaintiff Michael Spreadbury's second

amended complaint. For the reasons stated, the Court recommends that Lee

Enterprises' motion be denied with respect to Spreadbury's claims that are

predicated upon Lee Enterprises' August 9, 2010 newspaper article which reported

that Spreadbury had been convicted of disturbing the peace. Lee Enterprises'

motion, however, should be granted in all other respects.

# I. INTRODUCTION

This action arises from Spreadbury's use of the Bitterroot Public Library in Hamilton, Montana. In May or June, 2009, Spreadbury presented a document to the library staff that he wanted to be maintained in the library. Defendant Nansu Roddy, the library's assistant director, refused Spreadbury's request.

Spreadbury escalated his dispute with Roddy and the library by engaging in continued confrontational interactions with library staff. As a result of his conduct he was banned from the library.

Despite being banned, Spreadbury returned to the library on August 20, 2009, which led to further consequences. Defendant Kenneth Bell, the Hamilton City Attorney, filed a criminal complaint charging Spreadbury with criminal trespass.

Undeterred, Spreadbury continued to exacerbate his legal problems when he confronted Roddy outside the library later in 2009. As a result of that behavior, Roddy obtained an order of protection against Spreadbury from the Hamilton City Court, and Spreadbury was charged with felony intimidation on November 17, 2009.

On February 18, 2010, Spreadbury was found guilty of the criminal trespass charge after a jury trial.[1]  Dkt. 152-22.  Then, on October 15, 2010, Spreadbury entered a plea of no contest to the felony intimidation charge.  Dkt. 12-4.

Spreadbury was running as a candidate for mayor in Hamilton when some of the events giving rise to this action transpired.  Lee Enterprises owns the Ravalli Republic newspaper in Hamilton, and on September 10, 2009, it published an article in the newspaper and on its internet website regarding Spreadbury's conviction for criminal trespass.  Spreadbury alleges unidentified third parties posted comments on the internet making derogatory or defamatory statements about him.  Spreadbury was defeated in the mayoral election on November 3, 2009.

Spreadbury advances 26 claims for relief against the various Defendants.  His pleading sets forth claims under 42 U.S.C. § 1983 for violations of his rights under the United States Constitution, as well as other claims under Montana law.  Spreadbury requests injunctive relief, and an award of compensatory and punitive damages.

---

[1]In view of the order of protection obtained by Roddy, and the ban imposed against Spreadbury prohibiting him from returning to the library, Defendant Bell later moved to dismiss the criminal trespass charge.  On August 16, 2010, the state district court granted the motion and dismissed the charge.  Dkt. 152-27.

## II.   PROCEDURAL BACKGROUND

Lee Enterprises previously filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss Spreadbury's claims against it.  On July 28, 2011, this Court entered its Findings and Recommendations regarding Lee Enterprises' motion, and by Order entered October 4, 2011, the District Court dismissed Spreadbury claims:  (1) under 42 U.S.C. § 1983, (2) for defamation based on Lee Enterprises' privileged reports of Spreadbury's judicial proceedings, (3) for defamation per se based on Lee Enterprises' report of Spreadbury's conviction for criminal trespass, and (4) for negligence per se.

Certain of Spreadbury's claims against Lee Enterprises, however, survived dismissal — including Spreadbury's claim of defamation based on comments posted on Lee Enterprises' internet website in connection with its September 10, 2009 news article about Spreadbury.  That claim, in turn, sufficiently supported Spreadbury's claims for negligence, tortious interference with prospective economic advantage, negligent and intentional infliction of emotional distress, punitive damages, and injunctive relief.

In the interim, on August 10, 2011, the Court granted, in limited part, Spreadbury's motion requesting leave to file his second amended complaint.

Specifically, the Court permitted a new claim of defamation stemming from an article Lee Enterprises published on August 9, 2010. The claim alleges as follows:

> In a Ravalli Republic article dated August 9, 2010 false statements are made about criminal behavior, prior lawsuits filed, and comments made by Plaintiff in oral arguments before Judge Larson, in the 21st Judicial district court.

Dkt. 90 at ¶ 89. The Court denied Spreadbury leave to add any other claims against Lee Enterprises, and expressly stated that Spreadbury's second amended complaint "is subject to the terms of" the August 10, 2011 Order. Dkt. 85 at 14.

In sum, Spreadbury's only remaining claims against Lee Enterprises are predicated upon his allegations of (1) defamatory comments published on the internet in connection with Lee Enterprises' September 10, 2009 news article, and (2) defamatory statements published in Lee Enterprises' August 9, 2010 news article, and defamatory comments published on the internet about that article.

### III.   APPLICABLE LAW

#### A.  Summary Judgment Standards

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

A party moving for summary judgment who does not have the burden of persuasion at trial, must produce evidence which either: (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial. *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattret*, 477 U.S. 317, 324 (1986). A party opposing summary judgment must identify evidence establishing that a dispute as to a particular material fact is genuine. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), abrogated on other grounds as noted in *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

Finally, because Spreadbury is proceeding pro se the court must construe his pro se documents liberally and give him "the benefit of any doubt." *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999). *See also Erickson v. Pardus* 551 U.S. 89, 94 (2007).

## B. <u>Application of Montana Substantive Law</u>

Spreadbury has properly invoked the federal question jurisdiction of this Court under 28 U.S.C. § 1331 by advancing a claim under 42 U.S.C. § 1983 against all the Defendants in this action. Thus, the Court possess supplemental jurisdiction under 28 U.S.C. § 1367(a) over Spreadbury's claims founded in Montana law. In exercising supplemental jurisdiction over state law claims, the Court must apply state substantive law to the same extent as if it were exercising diversity jurisdiction. *Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000).

If an issue of state law arises and "the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002) (citations omitted). In doing so, the court must "look to existing state law without predicting potential changes in that law." *Ticknor*, 265 F.3d at 939 (citation omitted). The court should also rely on other persuasive authorities including treatises and decisions from other jurisdictions, as guidance. *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 865 (9th Cir. 1996).

## IV. DISCUSSION

### A. Defamation and Defamation Per Se

The tort of defamation — which is defined by statute in Montana — occurs through either libel or slander. Mont. Code Ann. § 27-1-801. Spreadbury's claims against Lee Enterprises are all based upon alleged libelous publications.[2]

Libel is defined as:

a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation that exposes any person to hatred, contempt,

---

[2]"Slanderous words are spoken words, whereas libelous words are written." *Tindall v. Konitz Contracting, Inc.*, 783 P.2d 1376, 1382 (Mont. 1989).

8

ridicule, or obloquy or causes a person to be shunned or avoided or that has a tendency to injure a person in the person's occupation.

Mont. Code Ann. § 27-1-802.

Certain publications or statements, however, are privileged and, therefore, do not constitute defamation. Montana law provides that a "privileged publication" includes one made "by a fair and true report without malice[3] of a judicial, legislative, or other public official proceeding or of anything said in the course thereof." Mont. Code Ann. § 27-1-804(4). If there is no dispute about the content of the judicial proceedings on which a report is based, then the issue of whether a particular report is privileged is a question of law for the court. *Lence v. Hagadone Investment Co.*, 853 P.2d 1230, 1237 (Mont 1993), overruled on other grounds by *Sacco v. High Country Independent Press, Inc.*, 896 P.2d 411, 423-24, 429 (Mont. 1995). A newspaper's publication of articles describing allegations in a judicial proceeding are privileged as a matter of law under section 27-1-804(4). *Lence*, 853 P.2d at 1237. The privilege protects reports of facts or allegations in

---

[3]In defamation actions, malice is defined as the "reckless disregard for the truth but such malice does not include hatred, personal spite, ill-will, or a desire to injure." *Rasmussen v. Bennett*, 741 P.2d 755, 758 (Mont. 1987). In these summary judgment proceedings Spreadbury has failed to present any evidence on which a jury could conclude that Lee Enterprises published any of its news articles with malice — he has failed to raise a genuine issue of material fact in that regard. Therefore, the Court will focus only on the fairness and truthfulness of Lee Enterprises' news articles.

judicial proceedings even before they have been judicially acted upon. *Cox v. Lee Enterprises, Inc.*, 723 P.2d 238, 240 (Mont. 1986).

### 1.     Lee Enterprises' August 9, 2010 News Article

#### a.     Defamation

In response to Lee Enterprises' summary judgment motion, Spreadbury filed his affidavit identifying allegedly false statements set forth in the article Lee Enterprises published on August 9, 2010. The article reported that on Friday, August 6, 2010, attorneys presented arguments at a hearing in state court regarding "Michael Spreadbury's sprawling $3.6 million cases against many of the county's civic and municipal officials." Dkt. 124-11 at 1. Spreadbury asserts the statement is false because the combined demand of his cases was only $675,000.

The record reflects that in 2010 Spreadbury was prosecuting at least three civil actions in the Montana Twenty-First Judicial District Court, Ravalli County, against various city and county public officials in Hamilton, Montana. Those actions are as follows: (1) *Spreadbury v. Wetzsteon and Corn*, Cause No. DV 10-122, (2) *Spreadbury v. Bell*, Cause No. DV 10-223, and (3) *Spreadbury v. Roddy*, Cause No. DV 10-224.

Spreadbury had also filed a civil action on May 11, 2010, against numerous city and county officials in the United States District Court, District of Montana,

identified as *Spreadbury v. Hoffman, et al.*, CV 10-49-M-DWM-JCL. Spreadbury

demanded compensatory damages in the amount of $3,615,782. *Spreadbury v.*

*Hoffman, et al.*, CV 10-49-M-DWM-JCL, Dkt. 2 at 49.[4]

The content of the referenced civil actions cannot be legitimately disputed.

Consequently, as a matter of law, Lee Enterprises' report as to the amount of

Spreadbury's demands for monetary compensation made in those judicial

proceedings was a fair and true report and, thus, a privileged statement under

Mont. Code Ann. § 27-1-804(4).

Next, Spreadbury complains about statements Lee Enterprises made in the

August 9, 2010 article about Hamilton City Attorney Kenneth Bell's conduct.

Spreadbury's civil lawsuits claimed Bell did not have authority to defend a non-

city employee in another civil action. The article reported that during a hearing in

Spreadbury's civil cases on August 6, 2010, Bell's attorney asserted that "Bell's

actions fell within the normal scope of duties of a city attorney." Dkt. 124-11 at

3of 3.

---

[4]Under Federal Rule of Evidence 201 the Court may take judicial notice of matters in the judicial record of any court, "both within and without the federal judicial system[.]" *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (citation and quotation omitted). *See also Intri-Plex Technologies, Inc. v. The Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

The August 9, 2010 article accurately reported arguments made by Bell's attorney during the course of the August 6, 2010 hearing. Bell's attorney — referring to Bell's conduct in representing or defending a non-city employee in a civil matter — argued that "Mr. Bell was acting in his scope as city attorney." Dkt. 124-5 at 10 of 11. Again, there exists no legitimate dispute regarding the transcript of the August 6, 2010 judicial hearing. Therefore, Lee Enterprises' report about the argument Bell's attorney made was a fair and true report and, thus, a privileged statement under Mont. Code Ann. § 27-1-804(4).

Spreadbury also challenges the August 9, 2010 article's report of statements that he made during the August 6, 2010 hearing. One of Spreadbury's lawsuits in Ravalli County alleged that Angela Wetzsteon — a law student working in the Ravalli County Attorney's Office who prosecuted Spreadbury for a criminal offense — was liable to him on the ground that she was not licensed to practice law and, therefore, was not authorized to prosecute him. *See* Dkt. 124-3. Spreadbury's lawsuit also alleged that officials in the Ravalli County Attorney's Office failed to properly supervise Wetzsteon's prosecution of him. During the August 6, 2010 hearing Spreadbury presented arguments relative to Wetzsteon's liability and the County Attorney's supervision of her. The August 9, 2010 article reported as follows: "The student was supervised by Assistant County Attorney

Bill Fullbright, Spreadbury said[.]"  Dkt. 124-11 at 3 of 3.  Spreadbury asserts this

report is false in that he did not make this statement during the hearing.

Under Montana law, defamatory libel requires a false and unprivileged

publication must have exposed the plaintiff "to hatred, contempt, ridicule, or

obloquy or causes a person to be shunned or avoided or that has a tendency to

injure a person in the person's occupation."  Mont. Code Ann. § 27-1-802.

Spreadbury fails to articulate a cogent argument as to how Lee Enterprises'

statement regarding Wetzsteon's supervision constitutes defamation under

Montana law.  Specifically, he fails to establish how the statement exposed

Spreadbury to "hatred, contempt, ridicule, or obloquy [... ,]" etc.  Mont. Code Ann.

§ 27-1-802.

### b.    Defamation Per Se

Finally, Spreadbury argues that Lee Enterprises is liable for defamatory libel

per se based on an August 9, 2010 article published in the Ravalli Republic that

stated Spreadbury had been convicted of the crime of disturbing the peace.[5]

Specifically, the article states as follows:

> Earlier on Friday [Judge] Larson held a pretrial hearing on an appeal by
> Spreadbury over his *disturbing the peace* conviction this spring.

---

[5]By the time this article was published Spreadbury had already lost the
election for mayor on November 3, 2009.

Dkt. 124-11 at 2 of 3 (emphasis added).  After the article was published

Spreadbury requested that Lee Enterprises correct the mistake.  On August 24,

2010, Lee published a correction stating as follows:

> An article on the front page of the Aug. 9 edition of the Ravalli Republic
> incorrectly identified a charge against Hamilton resident Michael
> Spreadbury.  The article should have stated that Spreadbury was appealing a
> conviction of criminal trespassing[.]

Dkt. 115-3 at 2 of 9.

Lee Enterprises concedes the article was inaccurate because Spreadbury was

never convicted of disturbing the peace.  Lee argues, however, that Spreadbury

has failed to establish that the inaccuracy defamed him.  Lee Enterprises asserts

that Spreadbury has failed to present any evidence establishing that the mistaken

reference to disturbing the peace exposed him to any "hatred, contempt, ridicule,

[...] obloquy[,]" or any other harm cognizable under Mont. Code Ann. § 27-1-802.

Second, it contends that because Spreadbury had been convicted of criminal

trespass — as reported elsewhere in the August 9, 2010 article — the inaccurate

statement regarding a disturbing the peace conviction could not have caused him

more damages than the accurate report of his criminal trespass conviction.

The Court notes that the accurate reference to Spreadbury's criminal

trespass conviction in the August 9, 2010 article does not make the article as

substantially true as Lee Enterprises suggests.  The article reported on

Spreadbury's "disturbing the peace conviction this spring[,]" which Lee

Enterprises later corrected to identify it as a conviction for criminal trespass.

Although the August 9, 2010 article subsequently identified the correct criminal

conviction, the article stated that "Spreadbury was found guilty this winter of

criminal trespass[.]" Dkt. 124-11 at 3 of 3 (emphasis added). The context of the

article does not establish that Lee Enterprises was referring to the same criminal

trespass conviction. Rather, an objective and reasonable person reading the article

could believe that Spreadbury had two convictions for criminal trespass, especially

since Spreadbury was convicted of criminal trespass in the winter on February 18,

2010, not in the spring. Therefore, the Court cannot agree that the article was

substantially true and could not have exposed Spreadbury to further damages.

More importantly, though, the reported conviction for disturbing the peace could

sustain Spreadbury's claim for defamatory libel per se.

Under Montana law, defamation per se — predicated upon either libelous or

slanderous words — exists when, inter alia, a private actor accuses an individual

of committing a crime. *See Blue Ridge Homes, Inc. v. Thein*, 191 P.3d 374, 378,

382 (Mont. 2008) (libel), *McCusker v. Roberts*, 452 P.2d 408, 414 (Mont. 1969)

(slander), and *Keller v. Safeway Stores, Inc.*, 108 P.2d 605, 608-609 (Mont. 1940)

(slander). Published words that are defamatory per se are presumed false, and

"[d]amage flowing from such slanderous statements is presumed and compensatory damages are recoverable without proof of special damages." *McCusker*, 452 P.2d at 414. *See also Blue Ridge*, 191 P.3d at 382; *Keller*, 108 P.2d at 614 (noting that the "plaintiff was entitled to some amount as general presumptive damages"); and *Manley v. Harer*, 235 P. 757, 759 (Mont. 1925) (presumption of damage).

Under the early common law of Montana, defamatory words imputing criminal conduct did not support a viable cause of action for defamation per se "unless the misconduct imputed amounts to a criminal offense, for which the party may be indicted and punished." *Ledlie v. Wallen*, 42 P. 289, 289-90 (Mont. 1895) (quoting *Pollard v. Lyon*, 91 U.S. 225, 226 (1875)), overruled by *Kosonen v. Waara*, 285 P. 668 (Mont. 1930).

As recognized by this Court in 1936, however, the common law of defamation per se in Montana has been relaxed by statute in that it is no longer necessary that the crime of which a person is accused of committing be one "of the felony grade." *Keller v. Safeway Stores, Inc.*, 15 F. Supp. 716, 720 (D. Mont. 1936). Rather, as explained in *Keller* that statutory law in Montana modified the common law by providing that a defamatory publication includes that which "[c]harges any person with crime." *Keller*, 15 F. Supp. at 720 (quoting Section

16

5691, Revised Codes of Montana (1921)).  Consequently, the publication is "actionable per se without regard to the grade of the crime charged, its moral nature or the punishment that may be inflicted upon conviction thereof[.]"  *Keller*, 15 F. Supp. at 720.

Montana statutory law continues to define slander[6] to include "a false and unprivileged publication other than libel that:  (1) charges any person with crime or with having been indicted, convicted, or punished for crime[.]"  Mont. Code Ann. § 27-1-803(1).  And the term "crime" is defined — as it was by the statutory scheme in effect at the time of *Keller* — as an offense "for which a sentence of death or of imprisonment or a fine is authorized."  Mont. Code Ann. § 45-2-101(49).  Thus, Montana recognizes a false accusation of criminal conduct as defamation per se without regard to the seriousness or character of the crime allegedly committed.[7]

---

[6]Mont. Code Ann. § 27-1-802 defining defamatory libel does not expressly state that falsely charging a person with a crime constitutes libel.  The decisional law of Montana, however, recognizes that falsely charging a person with a crime constitutes libel per se.  *See Blue Ridge Homes, Inc. v. Thein*, 191 P.3d 374, 378, 382 (Mont. 2008).  *See also Burr v. Winnett Times Publishing Co.*, 258 P. 242, 243-44 (Mont. 1927).

[7]It is noteworthy that the modern view in other jurisdictions is that defamation per se requires a false accusation of a serious crime — a criminal offense that would be "punishable by imprisonment in a state or federal institution[,]" referred to as "infamous punishment."  *Restatement (Second) of Torts* § 571 (1977).  *See e.g. Gillespie v. City of Macon*, 485 F. Supp. 2d 722, 729

Disturbing the peace is prohibited under Montana's disorderly conduct statute at Mont. Code Ann. § 45-8-101 which states that "[a] person commits the *offense* of disorderly conduct if the person knowingly disturbs the peace by" engaging in specific acts set forth in the statute. (Emphasis added.) *See State v. Robinson*, 82 P.3d 27, 28-30 (Mont. 2003) (characterizing a violation of Mont. Code Ann. § 45-8-101 as the offense of disturbing the peace). Because a person convicted of disorderly conduct may be sentenced to pay a fine, or may be imprisoned, the offense is a crime. Mont. Code Ann. §§ 45-2-101(49), and 45-8-101(2) and (3). Therefore, falsely charging a person with committing the crime of disturbing the peace would constitute defamation per se under Montana law.

As noted, Lee Enterprises concedes that it inaccurately reported Spreadbury had been charged and convicted of disturbing the peace. Negligent conduct in connection with publishing a false statement is sufficient to sustain a claim of defamation. *See Madison v. Yunker*, 589 P.2d 126, 132-33 (Mont. 1978), infra.

_____

(S.D. Miss. 2007); *MacDonald v. Riggs*, 166 P.3d 12, 18 (Alaska 2007); and *Ziglar v. Media Six, Inc.*, 2003 WL 549977, *1 (Va. Cir. 2003). Defamation per se is limited in that it is "[o]nly when the crime falsely imputed is of 'major and serious a character[,]'" "involving punishment infamous or disgraceful in character[]" that defamation per se is actionable. *Speed v. Scott*, 787 So. 2d 626, 633 (Miss. 2001). The accusation must be of a "grave offense[,]" otherwise an accusation that someone stole a pencil would inappropriately be actionable per se. *Speed*, 787 So. 2d at 635. As noted in *Keller*, 15 F. Supp. at 720, however, Montana law makes no distinction as to the grade, character, severity, or seriousness of the crime of which a person is falsely accused.

Additionally, a defendant may be held liable for defamation per se where the defendant incorrectly reports that a plaintiff was convicted of one crime even though the plaintiff was in fact convicted of a different crime. *See e.g. Towle v. St. Albans Publishing Co., Inc.*, 165 A.2d 363, 368 (Vt. 1960). Consequently, it is presumed that Spreadbury suffered damages — a presumption which, of course, is rebuttable. Lee Enterprises' motion is properly denied as to Spreadbury's claim of defamatory libel per se.[8]

## 2. Communications Decency Act

### a. Comments Posted by Third Party Internet Subscribers

Spreadbury contends Lee Enterprises is liable for comments third parties made about certain newspaper articles because Lee Enterprises published those comments on the internet. Spreadbury has filed copies of the specific comments that readers had posted relative to Lee Enterprises' September 10, 2009 article, and its August 9, 2010 article, and Spreadbury describes them as "defamatory third party comments[.]" Dkt. 136 at 3. For the reasons discussed, however, Lee Enterprises' publication of those third party comments on the internet under the circumstances of this case does not subject Lee Enterprises to liability.

---

[8]The Court notes that Lee Enterprises' August 24, 2010 correction article, if sufficient under Mont. Code Ann. § 27-1-820, would only limit its exposure to punitive damages. Mont. Code Ann. § 27-1-821.

The federal Communications Decency Act (the "Act") protects "providers of interactive computer services against liability arising from content created by third parties[.]" *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008). Specifically, the Act provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Further, the Act states that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). Reading sections 230(c)(1) and (e)(3) together, it is clear that subsection (c)(1):

> protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action,[9] as a publisher or speaker (3) of information provided by another information content provider.

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009). Computer service entities have "broad immunity" against liability "for publishing false or

---

[9]The liability protection also applies against causes of action advanced under federal law. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009) (citing *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157 (9th Cir. 2008)).

defamatory material so long as the information was provided by another party."

*Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122-23 (9th Cir. 2003).[10]

The Act defines the two positions that various parties may occupy with respect to the liability protection provided in § 230(c)(1) as follows:

(2) Interactive computer service

The term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.

(3) Information content provider

The term "information content provider" means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service.

47 U.S.C. § 230(f)(2) and (3).

There exists a fine, but distinct line between merely providing an "interactive computer service," and becoming an "information content provider." An internet website operator could become "responsible, in whole or in part," for

[10]One of the purposes of the Act was to "encourage interactive computer services that provide [third party] users *neutral* tools to post content online to police that content without fear that [...] they would become liable for every single message posted by third parties on their websites." *Fair Housing Council*, 521 F.3d at 1175 (emphasis in original).

the "development" of information content, and thereby fall outside of the liability

protection of the Act, if it materially contributes to the alleged unlawfulness of the

content of the information provided by a third party, or materially contributes to

the alleged illegality of a third party's conduct. *Fair Housing Council*, 521 F.3d at

1162, 1167-68.

In contrast, the Act immunizes "interactive computer service" providers for

their conduct in merely acting as a conduit for publications made by third parties.

The liability protection under § 230(c)(1) applies where a website operator makes

a neutral tool available on the website for third parties to tender written comments

for publishing because the operator "is not responsible, in whole or in part, for the

development of [the] content, which comes entirely from subscribers and is

passively displayed by" the website operator. *Fair Housing Council*, 521 F.3d at

1162, 1174; *Carafano*, 339 F.3d at 1125; 47 U.S.C. § 230(c)(1). A "simple,

generic prompt [on a website for a subscriber to make a comment] does not make

[the website operator] a developer of the information posted." *Fair Housing

Council*, 521 F.3d at 1174. As long as the website operator does not encourage or

require a subscriber to post illegal content, then the computer service will be

immune under the Act. *Id*. *See also Collins v. Purdue University*, 703 F. Supp. 2d

862, 878-80 (N.D. Ind. 2010) (granting liability protection under § 230(c)(1) to an

online newspaper publisher where the publisher merely provided third parties with an opportunity to submit comments about news articles, and the publisher did not create, develop, encourage, or influence the defamatory comments in any way).

In support of its summary judgment motion, Lee Enterprises relies upon an affidavit signed by Stacey Mueller. Dkt. 84-1. Ms. Mueller is the publisher of the Missoulian newspaper owned by Lee Enterprises, and she oversees the Ravalli Republic newspaper also owned by Lee Enterprises. Dkt. 84-1 at ¶¶ 1-2. Those newspapers publish articles on their internet websites and permit readers to post comments online about the articles. *Id*. at ¶ 3. Ms. Mueller reviewed the Ravalli Republic and Missoulian news articles published about Spreadbury at issue in this case, and the comments to those articles posted by third parties. *Id*. at ¶ 4. She confirms that all of those comments on the Ravalli Republic website were posted "by third-party, on-line readers[,]" and that "[t]he Ravalli Republic did not encourage, create, or otherwise develop the comments[, ...and] has not altered or otherwise edited the comments made by third parties on the newspaper's website." *Id*. at ¶¶ 6-7.

Spreadbury argues Lee Enterprises' reliance on the Communications Decency Act is misplaced. His only argument, however, is that Lee Enterprises is deemed a publisher of the third parties' comments, and it is not an "interactive

computer service" provider under the Act with respect to its Ravalli Republic or Missoulian internet news websites. Spreadbury's argument, however, fails as a mater of law.

The phrase "interactive computer service" is broadly defined, and "includes a wide range of cyberspace services[.]" *Batzel v. Smith*, 333 F.3d 1018, 1030 and n.15 (9th Cir. 2003). *See also Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). The most common "interactive computer services" are websites. *Fair Housing Council*, 521 F.3d at 1162 and n.6. Specifically, a newspaper entity which publishes articles on its internet website is an "interactive computer service." *Collins v. Purdue University*, 703 F. Supp. 2d 862, 878-80 (N.D. Ind. 2010).

Spreadbury does not identify any facts that would suggest the comments at issue in this case were not posted by third parties. Spreadbury, in fact, concedes the comments were made by third parties. Spreadbury also has not presented any facts, and there exists no evidence in the record on which a jury could conclude that Lee Enterprises was responsible, in whole or in part, for creating, developing, encouraging, or influencing the defamatory comments in any way.

Based on the foregoing, § 230(c)(1) of the Act protects Lee Enterprises against liability for defamation predicated upon the comments that third party

subscribers posted on the internet regarding Lee Enterprises' September 10, 2009 and August 9, 2010 articles. Lee Enterprises is entitled to judgment as a matter of law on those claims.

### b. Other Causes of Action Predicated Upon Publishing Third Parties' Comments

The Communications Decency Act protects a defendant against liability for claims other than defamation. Regardless of the specific label or identification of the cause of action advanced by a plaintiff, if the "duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker[,]'" then § 230(c)(1) of the Act protects the defendant against liability. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009).

In response to Lee Enterprises' summary judgment motion Spreadbury contends that Lee Enterprises' publication of third party comments constituted tortious interference with his employment. Dkt. 136 at 4. Similarly, Spreadbury's allegations in his second amended complaint seek to impose liability on Lee Enterprises for negligence based on its conduct in publishing the third parties' comments. Dkt. 90 at 34-35. In accordance with *Barnes*, to the extent those claims, or any other causes of action advanced by Spreadbury are predicated upon Lee Enterprises' conduct in publishing third party comments about him, the claims

are barred by § 230(c)(1) of the Act.  Thus, Lee Enterprises is entitled to judgment as a matter of law in that respect.

**B.  Remaining State Law Claims**

Lee Enterprises moves for summary judgment dismissing all of Spreadbury's remaining claims for relief.  Some of those claims, however, should survive dismissal in view of Spreadbury's remaining claim for defamation per se discussed above.

**1.    Negligence**

Spreadbury advances a claim of common law negligence against Lee Enterprises based on its publication of defamatory matters in its August 9, 2010 newspaper article.

"Negligence is the failure to use the degree of care that an ordinarily prudent person would have used under the same circumstance."  *Barr v. Great Falls International Airport Authority*, 107 P.3d 471, 477 (Mont. 2005).

> To maintain an action in negligence, the plaintiff must prove four essential elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) the breach was the actual and proximate cause of an injury to the plaintiff, and (4) damages resulted.

*Peterson v. Eichhorn*, 189 P.3d 615, 620-21 (Mont. 2008).  The existence of a legal duty is a question of law for the court's determination.  *Jackson v. State of Montana*, 956 P.2d 35, 42 (Mont. 1998).

Lee Enterprises requests summary judgment dismissing Spreadbury's claim of negligence on the grounds that Spreadbury has failed to identify any legal duty Lee Enterprises owed to Spreadbury with which it failed to comply. The Court disagrees because it recommends that Spreadbury's claim of defamation per se should survive summary judgment.

The law of defamation per se in Montana, as discussed above, imposes a legal duty upon a person or entity to refrain from falsely accusing another of committing a crime. In assessing a defendant's liability for defamation, a majority of states have followed the United States Supreme Court's decision in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974) and have applied a negligence standard of care in cases where a defendant publishes matters of either public or private concern about a private plaintiff. *See Floyd v. WBTW*, 2007 WL 4458924, *3 n.3 (D.S.C. 2007); *Kennedy v. Sheriff of East Baton Rouge*, 935 So. 2d 669, 680-81 (La. 2006). The Montana Supreme Court has also followed the suggestion in *Gertz* that a negligence standard should apply unless the plaintiff is a public figure. *See Madison v. Yunker*, 589 P.2d 126, 132-33 (Mont. 1978).

Here, although Spreadbury had been a candidate for mayor in the City of Hamilton, his candidacy ended in November, 2009, upon his defeat in the election.

Thus, at the time of Lee Enterprises' August 9, 2010 article Spreadbury was a private figure, and Lee Enterprises does not argue to the contrary.

Based on the foregoing, a negligence standard of care applies to Lee Enterprises' conduct in falsely reporting that Spreadbury was convicted of disturbing the peace.  Lee Enterprises was legally obligated to use the degree of care that an ordinarily prudent person would have used under the same circumstance.  Because Lee Enterprises has failed to meet its summary judgment burden of either negating an essential element of Spreadbury's negligence claim, or showing that Spreadbury lacks sufficient evidence to establish one of the essential elements, its summary judgment motion should be denied with respect to Spreadbury's claim of negligence.

## 2. Tortious Interference with Prospective Economic Advantage

Under Montana law, the elements of a cause of action for tortious or intentional interference with prospective economic advantage require that a defendant's acts:  "(1) are intentional and willful; (2) are calculated to cause damage to the plaintiff's business; (3) are done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor; and (4) result in actual damages or loss."  *Maloney v. Home and Investment Center, Inc.*, 994 P.2d 1124, 1132 (Mont. 2000).

Lee Enterprises moves for summary judgment dismissing Spreadbury's tortious interference claim on the ground that Spreadbury has not established that it committed any intentional, willful or wrongful act without right or justification. For the reasons discussed above, however, Spreadbury's claim of defamation per se based on his reported conviction for disturbing the peace should survive summary judgment. That conduct, if proven, could constitute the predicate wrongful act, committed without right or justification, in support of Spreadbury's tortious interference claim. Again, Lee Enterprises has failed to meet its summary judgment burden of either negating an essential element of Spreadbury's claim, or showing that Spreadbury lacks sufficient evidence in support of an essential element of the claim. Thus, Lee Enterprises is not entitled to judgment as a matter of law.

### 3.      Negligent and Intentional Infliction of Emotional Distress

Spreadbury alleges that all Defendants are liable for both negligent and intentional infliction of emotional distress. Specific to Lee Enterprises, Spreadbury alleges it is liable because it published defamatory statements against him.

Lee Enterprises requests summary judgment dismissing Spreadbury's

emotional distress claims. In response, Spreadbury has failed to present any

evidence in support of those claims.

The Montana Supreme Court has recognized independent causes of action

for negligent or intentional infliction of emotional distress. *See Sacco v. High*

*Country Independent Press, Inc.*, 896 P.2d 411 (Mont. 1995). These stand-alone

causes of action are subject to a heightened standard of proof in that they will

only:

> arise under circumstances where serious or severe emotional distress to the
> plaintiff was the reasonably foreseeable consequence of the defendant's
> negligent or intentional act or omission.

*Sacco*, 896 P.2d at 426, 428-29. The plaintiff must ultimately prove that the

emotional distress was "so severe that no reasonable person could be expected to

endure it." *Lorang v. Fortis Ins. Co.*, 192 P.3d 186, 222 (Mont. 2008) (quoting

*Sacco*, 896 P.2d at 425-426, 428-29). *See also Renville v. Fredrickson*, 101 P.3d

773, 775-76 (Mont. 2004) (discussing standard for severity and seriousness).

*Sacco*'s heightened standard of proof requires "that a plaintiff claiming

intentional or negligent infliction of emotional distress must make a threshold

showing to the court that their emotional distress is 'serious or severe' in order to

proceed to trial." *Jacobsen v. Allstate Ins. Co.,* 215 P.3d 649, 663 (Mont. 2009)

(citing *Sacco*, 896 P.2d at 427). In determining whether the threshold is satisfied in any particular case, "it is for the court to determine whether[,] on the evidence[,] severe or serious emotional distress can be found; [and, if so,] it is for the jury to determine whether, on the evidence, it has in fact existed." *Sacco*, 896 P.2d at 425 and 429.

Spreadbury has not identified or presented any admissible facts or evidentiary matters describing any emotional distress he has experienced as a result of Lee Enterprises' conduct in publishing false statements in its August 9, 2010 article. He has failed to present any evidence whatsoever on which a jury could find that he suffered emotional distress that was so serious or severe that no reasonable person could be expected to endure it as required under *Sacco*. Thus, Lee Enterprises is entitled to summary judgment dismissing Spreadbury's claims of negligent and intentional infliction of emotional distress.

The Court notes, however, that Spreadbury's second amended complaint contains a prayer for relief seeking compensation for emotional distress as an element of damages. The high standard of proof established in *Sacco* applies only to an independent cause of action for the infliction of emotional distress, and the standard does not apply to a claim requesting compensation for emotional distress as an element of damages associated with other torts in general. *Lorang v. Fortis*

*Ins. Co.*, 192 P.3d 186, 223 (Mont. 2008). Therefore, to the extent Spreadbury requests compensation for emotional distress as an element of damages "[t]he measure of [his] actual damages is a factual matter for the jury to determine." *Id.*, 192 P.3d at 224.

### 4.    Injunctive Relief

Spreadbury further requests injunctive relief against Lee Enterprises due to its defamatory conduct alleged in the second amended complaint. He seeks to prevent Lee Enterprises from publishing any further defamatory statements.

"Injunctions that broadly order the enjoined party simply to obey the law [...] are generally impermissible." *Rocky Mountain Christian Church v. Board of County Commissioners of Boulder County*, 612 F. Supp. 2d 1157, 1161 (D. Colo. 2009) (quoting *N.L.R.B. v. U.S. Postal Service*, 486 F.3d 683, 691 (10th Cir. 2007) (Tymkovich, J. concurring and citing cases)). The courts lack authority to impose injunctive relief which broadly requires a person to simply obey the law. *See N.L.R.B. v. Express Publishing Co.*, 312 U.S. 426, 435-36 (1941).

Here, Spreadbury's request seeks injunctive relief prohibiting Lee Enterprises from publishing defamatory matters against Spreadbury, i.e. requiring it to obey the law of defamation in Montana. Such relief is not available, and Lee Enterprises is entitled to summary judgment dismissing the claim.

### 5. **Punitive Damages**

Lee Enterprises moves for summary judgment dismissing Spreadbury's claim for punitive damages. Its only argument, however, is that the claim should be dismissed because it is not liable for any other underlying cause of action prosecuted by Spreadbury in this action, and absent a viable theory of recovery resulting in an award of actual damages against Lee Enterprises, Spreadbury is not entitled to recover punitive damages. *See Doll v. Major Muffler Centers, Inc.*, 208 Mont. 401, 414, 687 P.2d 48, 55 (1984), and *Peterson v. Eichhorn*, 189 P.3d 615, 624 (Mont. 2008).

The Court, however, recommends that several of Spreadbury's causes of action predicated upon Lee Enterprises' conduct in falsely reporting that Spreadbury was convicted of disturbing the peace should survive summary judgment. Therefore, Lee Enterprises has a failed to meet its summary judgment burden of negating an essential element of Spreadbury's claim for punitive damages.

## V. **CONCLUSION**

Based on the foregoing, IT IS RECOMMENDED that Lee Enterprises' summary judgment motion be DENIED as to Spreadbury's causes of action for defamation per se, negligence, tortious interference with prospective economic

advantage, and punitive damages, but only to the extent those claims are predicated upon the fact that Lee Enterprises published a news article on August 9, 2010, which incorrectly reported that Spreadbury had been convicted of disturbing the peace. Lee Enterprises' motion should be GRANTED in all other respects, and all of Spreadbury's other legal claim and other predicate factual allegations against Lee Enterprises should be DISMISSED.

DATED this 30th day of November, 2011.

 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge