## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

MICHAEL E. SPREADBURY,                    CV 11-64-M-DWM-JCL

             Plaintiff,

     vs.                                                      ORDER, and
                                                              FINDINGS AND
                                                              RECOMMENDATIONS
BITTERROOT PUBLIC LIBRARY,
CITY OF HAMILTON,
LEE ENTERPRISES, INC.,
BOONE KARLBERG, P.C.,
DR. ROBERT BROPHY, TRISTA SMITH,
NANSU RODDY, JERRY STEELE,
STEVE SNAVELY, STEVEN BRUNER-MURPHY,
RYAN OSTER, KENNETH S. BELL, and JENNIFER LINT,

             Defendants.

_____

Before the Court are the following two Fed. R. Civ. P. 56 motions for

summary judgment filed by Defendants Bitterroot Public Library, City of

Hamilton, Dr. Robert Brophy, Trista Smith, Nansu Roddy, Jerry Steele, Steve

Snavely, Steven Bruner-Murphy, Ryan Oster, Kenneth Bell and Jennifer Lint (City

Defendants) requesting judgment dismissing pro se Plaintiff Michael Spreadbury's

2nd Amended Complaint:

   (1) Defendants' Motion for Summary Judgment on Plaintiff's Federal
   Claims; and

(2) Defendants' Motion for Summary Judgment on Plaintiff's State Law Claims.

For the reasons stated, the Court recommends that the motions be denied in limited part as discussed below, but should be granted in all other respects.

## I.    BACKGROUND

This action arises from Spreadbury's use of the Bitterroot Public Library in Hamilton, Montana.  In May 2009, Spreadbury submitted a document to the library to be maintained in its collection.  But, Defendant Nansu Roddy, the library's assistant director, refused Spreadbury's submission.  Over time, Spreadbury's dispute with Roddy escalated into multiple confrontational interactions with library staff.  On June 11, 2009, the director of the library terminated Spreadbury's library privileges and banned him from the library based on his conduct at the library.

Spreadbury then mounted several challenges to the termination of his library privileges.  But, after considering Spreadbury's challenges, on August 20, 2009, Defendant Robert Brophy, the Chairman of the Bitterroot Public Library's Board of Trustees, sent a letter to Spreadbury informing him that the Board of Trustees fully supported the director's June 11, 2009 decision banning Spreadbury from the library.

In the face of the ban, Spreadbury returned to the library on August 20, 2009, which led to further consequences. Defendant Kenneth Bell, the Hamilton City Attorney, filed a criminal complaint charging Spreadbury with criminal trespass for returning to the library.

In November 2009, Spreadbury confronted Roddy outside the library. Based on that confrontation, Roddy obtained an order of protection against Spreadbury from the Hamilton City Court. Additionally, Spreadbury was charged with felony intimidation for that incident.

On February 18, 2010, Spreadbury was found guilty of the criminal trespass charge after a jury trial in the Hamilton City Court. Dkt. 152-22. Then, on October 15, 2010, Spreadbury entered a plea of no contest to the felony intimidation charge. Dkt. 12-4.

Spreadbury appealed his criminal trespass conviction to the district court. During the pendency of the appeal, Defendant Bell moved to dismiss the criminal trespass charge. On August 16, 2010, the state district court granted the motion and dismissed the charge. Dkt. 152-27.

Spreadbury advances numerous legal claims for relief against the various Defendants. Invoking federal question jurisdiction, 28 U.S.C. § 1331, Spreadbury asserts claims under 42 U.S.C. § 1983 for violations of his rights under the United

States Constitution.  And invoking supplemental jurisdiction, 28 U.S.C. § 1367, Spreadbury advances claims under Montana law.  Spreadbury seeks both monetary and injunctive relief.

## II.    APPLICABLE LAW - SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

A party moving for summary judgment who does not have the burden of persuasion at trial must produce evidence which either:  (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial.  *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).  A

party opposing summary judgment must identify evidence establishing that a dispute as to a particular material fact is genuine. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party must support an assertion of fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations [...], admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). *See also* L.R. 56.1(a)(2) and (b)(2). While the material presented in summary judgment proceedings "does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence[]" later at trial. *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010).

Where a party fails to address another party's factual assertion the court may consider the fact "undisputed for purposes of the motion[, ... and] grant summary judgment if the motion and supporting material — including the facts considered

undisputed — show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(2) and (3).

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), abrogated on other grounds as noted in *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

Finally, because Spreadbury is proceeding pro se the court must construe his documents liberally and give them "the benefit of any doubt." *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999). *See also Erickson v. Pardus* 551 U.S. 89, 94 (2007).

## III.    DISCUSSION

### A.  Spreadbury's Motion for Continuance

Spreadbury moves under Fed. R. Civ. P. 56(d)[1] to continue these proceedings on the City Defendants' summary judgment motions.  He asserts he needs additional evidence in support of his claims to adequately oppose the City Defendants' motions.

---

[1]Although Spreadbury cites to Fed. R. Civ. P. 56(f), the substance of former subdivision (f) is now contained in subdivision (d).  Fed. R. Civ. P. 56, Advisory Committee Notes of 2010 Amendments.

Federal Rule of Civil Procedure 56(d) allows a court to postpone a summary judgment ruling pending further discovery. But, in order to obtain a postponement, the moving party must support the request with an affidavit affirmatively establishing: (1) that the party has diligently pursued discovery; (2) the specific facts the party hopes to obtain through further discovery; (3) that the facts sought actually exist; and (4) that the sought-after facts are essential to oppose summary judgment. *See Family Home and Finance Center, Inc. v. Federal Home Loan Mortgage Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (citation omitted); *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n.5 (9th Cir. 2009); and *Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir. 1994). Failure to satisfy these requirements is an appropriate ground for denying a motion for continuance, and the court may proceed to address the summary judgment motion. *Family Home and Finance Center, Inc.*, 525 F.3d at 827.

Although Spreadbury submitted an affidavit in support of his motion, he asserts only that he believes there may exist some unidentified "conflicts" in some witnesses' testimony, and that those conflicts could be resolved by further depositions or sworn statements. Dkt. 169 at 2. Additionally, Spreadbury states he expects to receive unidentified "information from Defendants that will show more material facts in this case that preclude summary judgment." *Id*.

Spreadbury's affidavit is insufficient. Spreadbury fails: (1) to identify the specific facts or testimony he hopes to obtain, (2) to establish that the facts and testimony he seeks actually exist or can be obtained, (3) to demonstrate why any specific facts are essential to defeat summary judgment, and (4) to explain why he has failed to obtain the asserted facts through his diligent pursuit of discovery. Therefore, having failed to satisfy the Rule 56(d) requirements in support of his motion for a continuance, IT IS HEREBY ORDERED that Spreadbury's motion is DENIED. The Court will proceed to consider the City Defendants' summary judgment motions.

## B. Spreadbury's Federal Claims

42 U.S.C. § 1983 permits a plaintiff to present claims under federal law against a state official or employee if the plaintiff can establish that person was acting under color of state law and deprived the plaintiff of a federal right. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). Spreadbury alleges the City Defendants violated several of the rights secured him by the United States Constitution. The City Defendants move for summary judgment dismissing Spreadbury's § 1983 federal claims on various grounds discussed below.

## 1.    Qualified Immunity

The City Defendants assert they are entitled to qualified immunity from liability on Spreadbury's federal claims.  This immunity doctrine renders individual state actors immune from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 181 (1982).  Under the qualified immunity analysis the court considers whether the facts, taken in the light most favorable to the party asserting the injury, show the defendant's conduct violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If no constitutional right was violated, the court need not proceed further with its inquiry.  *Id*. at 201.

Another independent prong of the immunity analysis requires the court to consider whether the asserted constitutional right was clearly established.  *Saucier*, 533 U.S. at 201.  A right is clearly established if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Id*. 532 U.S. at 202.

The court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, the City Defendants assert that the facts of this case do not establish that any Defendant violated any of Spreadbury's constitutional rights. Thus, under the circumstances of this case, the Court finds it is appropriate to first consider whether Spreadbury has established a violation of any right secured him by the United States Constitution.

### a. Defendants Bitterroot Public Library, Brophy, Smith, and Roddy

Spreadbury advances claims against Defendants Bitterroot Public Library, Robert Brophy, Trista Smith, and Nansu Roddy (Library Defendants) stemming from his use and occupation of the public library. Brophy is the Chairman of the library's Board of Trustees. Smith is the current director of the Bitterroot Public Library, and Roddy is the assistant director of the library. Spreadbury contends these Defendants are liable under 42 U.S.C. § 1983 for: (1) rejecting the document Spreadbury submitted to the library for display on the shelves in the library, (2) terminating Spreadbury's library privileges, and (3) imputing criminal conduct to Spreadbury, e.g. trespassing on the library's public property.

### (1) Submission of Materials to Library

Spreadbury contends the Library Defendants violated his First Amendment rights by refusing to place his document into the library's collection. The Library Defendants correctly assert that, as a matter of law, "a public library does not have

10

an obligation to add material to its collection [even if] the material is constitutionally protected." *United States v. American Library Association, Inc.*, 539 U.S. 194, 209 n.4 (2003). Consequently, the Library Defendants have satisfied their summary judgment burden of establishing that their conduct did not rise to the level of a constitutional deprivation. *Nissan Fire & Marine*, 210 F.3d at 1102.

Spreadbury has failed to present any legal authority to establish that the Library Defendants' conduct in refusing his document constitutes a violation of any constitutional right. Therefore, the Library Defendants are entitled to qualified immunity with respect to this claim.

### (2) **Termination of Library Privileges**

Spreadbury asserts that the Library Defendants deprived him of a constitutionally protected liberty interest without due process of law when they terminated his library privileges and banned him from the library.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. Amend. XIV, § 1. To succeed with a procedural due process claim, "the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a

11

deprivation of the interest by the government; [and] (3) [a] lack of process.'"

*Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (quoting *Portman v.*

*County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

A protected liberty interest, enforceable under 42 U.S.C. § 1983, may arise

from either the Due Process Clause of the Fourteenth Amendment itself — which

incorporates numerous rights from the Bill of Rights — or a provision of state law.

*Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); and

*Carver v. Lehman*, 558 F.3d 869, 872 (9th Cir. 2009).  There exists a protected

liberty interest in the right to use a public library created directly by the First

Amendment and incorporated into the Due Process Clause of the Fourteenth

Amendment.  *See Doyle v. Clark County Public Library*, 2007 WL 2407051, *4

(S.D. Ohio 2007) (citing *Kreimer v. Bureau of Police for the Town of Morristown*,

958 F.2d 1242, 1255 (3rd Cir. 1992)).  But, because a public library facility is

properly characterized as a limited public forum for purposes of assessing the

extent of this protected liberty interest, a public library entity has authority to

regulate the use of the library and to restrict certain activities within the library.

*Kreimer*, 958 F.2d at 1262.

There also exists a liberty interest in access to a public library that is

statutorily created in Montana at Mont. Code Ann. § 22-1-311:

> Every library established under the provisions of this part shall be free to the use of the inhabitants of the city or the county supporting such library. The board may exclude from the use of the library any and all persons who shall willfully violate the rules of the library.

*See Hill v. Derrick*, 2006 WL 1620226, *8 (M.D. Pa. 2006). This statutorily created liberty interest is not absolute, but is likewise subject to regulation and restriction.

For purposes of addressing the Library Defendants' summary judgment motion, the Court concludes Spreadbury has a constitutionally protected interest in access to the Bitterroot Public Library as recognized in *Doyle* and *Kreimer*. Furthermore, it is undisputed that the Library Defendants deprived Spreadbury of that interest. Consequently, the Court will focus on the issue of whether the Library Defendants afforded Spreadbury adequate due process relative to their deprivation of his access to the library.

A procedural due process claim requires a plaintiff to prove he was denied adequate procedural protections. *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 716 (9th Cir. 2011). The plaintiff must demonstrate the absence of notice and an opportunity to be heard prior to the deprivation of a liberty interest. *Lone Star Security & Video, Inc. v. City of Los Angeles*, 584 F.3d 1232, 1236 (9th Cir. 2009).

The extent of the procedural protections to which an individual may be entitled depends upon the nature of the interest and the circumstances surrounding

the deprivation. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The United States Supreme Court has developed a balancing test to be used in assessing whether a particular process afforded a citizen was adequate. *See Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). That test requires the courts to consider "three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Application of the *Mathews* test to the facts and circumstances of this case leaves the Court convinced that the Library Defendants afforded Spreadbury adequate due process when they terminated his library privileges.

On May 29, 2009, Spreadbury met with Defendant Nansu Roddy, the assistant director at the Bitterroot Public Library, to request that the library accept a document he submitted to be maintained in the library's collection. Roddy refused Spreadbury's request. Spreadbury pursued his request further, but on June 9, 2009, the then director of the library, Gloria Langstaff, sent Spreadbury a letter denying his request.

14

On June 11, 2009, Spreadbury returned to the library and met with Jo Frankenforter, a library staff person. Apparently as a result of that meeting and Spreadbury's conduct towards Frankenforter, on June 11, 2009, Langstaff wrote Spreadbury a letter informing him that he was banned from the library. The letter stated he was banned "in compliance with the library's Operation Policies and the [Montana criminal trespass statute...] due to [Spreadbury's] disruptive behavior constituting a public nuisance." Dkt. 152-10; Dkt. 90 at ¶ 35.

On June 16, 2009, Spreadbury sent an email to Ellyn Jones, a member of the Board of Trustees. Dkt. 152-13. Spreadbury asserted that he was improperly banned from the library, and he requested that Jones give him permission to attend the Board of Trustees' meeting in July, 2009. Spreadbury stated to Jones that his right to use the library should be restored.

On July 8, 2009, Spreadbury prepared a "Reconsideration Request Form" and submitted it to staff at the library. In his request for reconsideration, Spreadbury again asserted that the document he submitted to the library should be placed with the library's temporary reserve materials. Spreadbury also asserted his right to use the library arguing Langstaff's conduct in banning him from the library violated library policies. Dkt. 152-14 at 2.

Subsequently, on July 15, 2009, Spreadbury sent a letter to Langstaff asserting that a library director has no authority to terminate a patron's library privileges. Dkt. 152-16. He asserted the authority to exclude a person from a library was instead granted by state law at Mont. Code Ann. § 22-1-311, and that her conduct in banning him from the library violated state law. Dkt. 152-16.

Ultimately, on August 20, 2009, Defendant Robert Brophy, the Chairman of the Bitterroot Public Library's Board of Trustees, sent a letter to Spreadbury informing him that the Board of Trustees fully supported Langstaff's June 11, 2009 letter banning Spreadbury from the library. Dkt. 152-19.

Brophy has submitted his affidavit testimony presenting further background information supporting the decision to ban Spreadbury from the library. Brophy states he participated in the decisions regarding Spreadbury's library privileges, and has personal knowledge of the basis for those decisions. Dkt. 152-6 at ¶ 2. The decision to ban Spreadbury from the library was "based on confrontations [Spreadbury] instigated with Library staff and his willful refusal to follow Library policy." Dkt. 152-6 at ¶ 4. The individuals involved in deciding to ban Spreadbury from the library "deemed the action necessary to protect [the library] staff from intimidation, harassment, and disruption of job duties[, ...] to ensure the enjoyment of the Library by other patrons and guard against further disruption."

*Id.*[2]  Finally, Brophy states that the decision to ban Spreadbury "was made pursuant to the Library Operations Policy and was <u>not</u> based on the substantive content of Spreadbury's speech." *Id.* (emphasis in original).  Brophy asserts the decision makers did not "seek to chill or deter Spreadbury's speech." *Id.* at ¶ 5.

Brophy also states the individuals involved in the decision to ban Spreadbury considered Spreadbury's various requests for reconsideration.  Dkt. 152-6 at ¶ 7.  But, Spreadbury's requests did not change the Board's decision to uphold the ban.  *Id.*  Brophy further states that "[g]iven Spreadbury's disruptive and intimidating behavior toward Library staff, nothing Spreadbury could have presented would have altered the Library's decision to prohibit his entry onto the property." *Id.* at ¶ 8.

The foregoing factual assertions of the Library Defendants are sufficient to demonstrate that they afforded Spreadbury the minimum due process requirement of notice and an opportunity to be heard.  The documentary evidence and Brophy's affidavit establish that the Library Defendants notified Spreadbury of the

---

[2]Although Spreadbury may dispute that he was actually harassing staff, or intimidating and disruptive to staff while he was at the Bitterroot Public Library, he does not dispute the authenticity and substance of the documents the Library Defendants submitted in support of their summary judgment motion.  Spreadbury does not dispute that the Library Defendants perceived him as threatening, harassing, and disruptive, and that they asserted those grounds as the basis for terminating his library privilege.

termination of his privileges, and the reasons they advanced as the grounds for the termination.[3] Additionally, the Library Defendants' assertions of fact demonstrate that they afforded Spreadbury an opportunity to be heard through his various requests for reconsideration.

Against this factual background, the Court turns to consider the adequacy of the process afforded Spreadbury through consideration of the *Mathews* factors.

Under the first *Mathews* factor, the Court concludes Spreadbury's limited liberty interest in having access to the library is not so great as to warrant more process than the minimum due process requirement of notice and an opportunity to be heard. *See Hill v. Derrick*, 2006 WL 1620226, *8 (M.D. Pa. 2006) (considering a citizen's right of access to a public library).

Under the second *Mathews* factor, the Court finds that the risk of an erroneous deprivation of Spreadbury's interest was minimal. This factor considers whether there is a risk of an erroneous deprivation by virtue of the "procedures used[.]" *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). The Library Defendants have affirmatively established the procedures they employed in considering the propriety of terminating Spreadbury's library privileges. The Library Defendants'

---

[3]Although Spreadbury disputes the validity of the grounds on which the Library Defendants relied in terminating his library privileges, he does not dispute that he was notified of those grounds.

assertions of fact demonstrate the procedures they used were sufficient to guard against the risk of an erroneous deprivation.

In responding to the Library Defendants' summary judgment motion, Spreadbury fails to identify or present any facts suggesting that the procedures employed by the Library Defendants were defective, or demonstrating how a risk of an erroneous deprivation could occur by virtue of the procedures employed.[4] Furthermore, absent any risk-inducing defect, there exists no value to additional or substitute procedural safeguards.

Finally, the government's interest under the circumstances of this case is relatively high. The Library Defendants had a significant interest in preserving the function and character of the library recognized as a peaceful place — "a place dedicated to quiet, to knowledge, and to beauty." *Brown v. State of Louisiana*, 383 U.S. 131, 142 (1966).

---

[4]The Court recognizes that Spreadbury disputes the merits of the grounds on which the Library Defendants relied to terminate his privileges. In substance, Spreadbury argues that he did not engage in disruptive, intimidating, or harassing behavior and, therefore, he suggests the deprivation of his library privileges was "erroneous." A procedural due process claim, however, does not permit a plaintiff to challenge the propriety of the deprivation decision. Rather, under *Mathews* the claim permits a plaintiff to challenge only the propriety of the procedures employed in reaching a decision. "[T]he very nature of the due process inquiry indicates that the fundamental fairness of a particular procedure does not turn on the result obtained" through that procedure. *Walters v. National Association of Radiation Survivors*, 473 U.S. 305, 321 (1985).

Under the circumstances of this case, the Court concludes that application

of the *Mathews* factors justifies the scope of the procedures the Library

Defendants afforded Spreadbury relative to their deprivation of his library

privileges.  Spreadbury has failed to meet his summary judgment burden of raising

a genuine issue of material fact suggesting more extensive procedural protections

were required under the circumstances of this case.  Therefore, the Court

concludes those post-deprivation procedures were constitutionally adequate.[5]

In sum, the Library Defendants have satisfied their burden on summary

judgment to negate the element of Spreadbury's procedural due process claim

requiring him to establish a lack of due process.  *Nissan Fire & Marine*, 210 F.3d

at 1102.  Spreadbury has not identified or presented facts as required under Fed. R.

Civ. P. 56(c)(1) to raise a genuine issue of material fact suggesting a lack of due

---

[5]The Court recognizes that generally a state actor must afford an individual predeprivation process before the person is deprived of a constitutionally protected interest.  *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008).  But, in certain situations where, for example, "a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake," postdeprivation remedies can satisfy due process.  *Zinermon v. Burch*, 494 U.S. 113, 132 (1990).  Additionally, a predeprivation process may not be constitutionally required in situations requiring quick action by the state, or where it would be impractical to provide a predeprivation process.  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982).

Here, Spreadbury does not assert that a predeprivation process was required.  And Spreadbury's limited liberty interest in access to the library did not warrant a predeprivation process.

process. Consequently, the Court deems the facts regarding this claim as undisputed under Fed. R. Civ. P. 56(e)(2), and the Library Defendants are entitled to qualified immunity and summary judgment dismissing Spreadbury's procedural due process claim.

### (3) **Imputed Criminal Conduct**

Spreadbury asserts the Library Defendants are liable under 42 U.S.C. § 1983 for imputing criminal conduct to him, and thereby defaming him. Spreadbury's assertion, however, fails as a matter of law.

The Library Defendants correctly assert that a state actor's defamatory statements, by themselves, do not rise to the level of a violation of an individual's constitutional rights remediable under section 1983. *Paul v. Davis*, 424 U.S. 693, 712 (1976); *Johnson v. Barker*, 799 F.2d 1396, 1399 (9th Cir. 1986). Therefore, the Library Defendants have negated an element of Spreadbury's claim by demonstrating their conduct did not violate a constitutional right.

In response, Spreadbury has neither identified any factual basis, nor asserted any legal authority demonstrating the Library Defendants violated any constitutional right by virtue of their alleged defamatory statements. Therefore, the Library Defendants are entitled to qualified immunity with respect to this defamation claim.

### b.     Defendants Snavely, Bruner-Murphy, and Oster

Spreadbury contends Defendants Steve Snavely, Steven Bruner-Murphy, and Ryan Oster are liable for their conduct in investigating accusations of criminal conduct by Spreadbury. Snavely and Bruner-Murphy are officers employed by the Hamilton Police Department, and Oster is the Hamilton Chief of Police.

### (1)     Snavely

Snavely investigated allegations of Spreadbury criminally trespassing on the library premises on August 20, 2009. Spreadbury alleges that Snavely violated his constitutional rights by "accusing Spreadbury of criminal trespass while [Spreadbury was] peacefully assembled on public property[,]" purportedly in violation of "the right of the people peaceably to assemble" as protected under the First Amendment to the United States Constitution.[6] Dkt. 90 at 29.

The City Defendants represent to the Court that they submitted discovery requests to Spreadbury requesting that he identify the facts on which he bases his federal claim against Snavely. Spreadbury responded by repeating his allegations that Snavely is liable for accusing Spreadbury of criminal trespass when

---

[6]Although theses allegations are contained within Spreadbury's cause of action labeled as "Negligence," the City Defendants have construed these allegations as a claim advanced by Spreadbury against Snavely under 42 U.S.C. § 1983.

Spreadbury was purportedly exercising his right of peaceable assembly. Dkt. 149 at 23.

The City Defendants have provided limited information regarding Snavely's alleged conduct through the police reports they have filed in this action.[7] But Snavely's police report does establish that he responded to a call to the police department complaining that Spreadbury was sitting in a gazebo on the Bitterroot Public Library property and was trespassing.[8] Dkt. 158-7 at 2 of 3. Snavely spoke with Spreadbury in the gazebo, and ultimately warned Spreadbury not to go to the library. Dkt. 158-7 at 3 of 3.

---

[7]The information is limited in that certain pages of Snavely's police reports are missing from the record in this case. The City Defendants have provided a copy of two of Snavely's police reports regarding Spreadbury's criminal trespass conduct. The first report (Case Report 1-209CR0001932 (Dkt. 158-7)) provides information regarding Snavely's initial response to the Bitterroot Public Library, but the copy provided to the Court is missing pages 3 and 4 of the report. Consequently, the City Defendants have not provided the Court with the details of what transpired between Snavely and Spreadbury while they were outside the Bitterroot Public Library on the afternoon of August 20, 2009.

[8]By affidavit dated October 27, 2011, Chief of Police Ryan Oster authenticated 11 police reports prepared by officers of the Hamilton Police Department. To the extent any information or entries set forth in those police reports are based on a law enforcement officer's own observations and knowledge, that information falls within the exception to the hearsay rule at Fed. R. Evid. 803(6), and is admissible on the grounds that the particular law enforcement officer had a duty to make a report of the matter. *United States v. Pazsnit*, 703 F.2d 420, 424 (9th Cir. 1983).

The facts provided to the Court by both parties establish that Snavely's conduct in conducting an investigation of, and reporting his findings about Spreadbury's actions on August 20, 2009, does not rise to the level of a constitutional violation. It is undisputed that by the time of Snavely's conduct on August 20, 2009, Spreadbury had been banned from the Bitterroot Public Library, yet he had returned to, and was on the library property that day. Snavely's report of his August 20, 2009 investigation led to Defendant Bell filing a complaint against Spreadbury for criminal trespass.

As a matter of statutory law in Montana, when a criminal "complaint" is presented to a court, "the court shall examine the sworn complaint or any affidavits, if filed, to determine whether probable cause exists to allow the filing of a charge." Mont. Code Ann. § 46-11-110. Spreadbury does not dispute the city judge determined probable cause existed to allow Bell to file the criminal complaint against Spreadbury. And ultimately a jury found Spreadbury was guilty of the offense.

The rights afforded citizens under the First Amendment are not absolute, and are subject to reasonable regulation under the laws of the states, and to state laws defining criminal conduct. *Virginia v. Black*, 538 U.S. 343, 358 (2003); *Cox v. State of New Hampshire*, 312 U.S. 569, 574-576 (1941) (concluding that a

criminal conviction did not violate First Amendment rights, including the right of peaceable assembly). The undisputed facts of record establish that Spreadbury was found guilty of criminal trespass for entering the library on August 20, 2009. Consequently, the City Defendants have satisfied their summary judgment burden of establishing the absence of a constitutional violation under the circumstances of this case, and Snavely's entitlement to qualified immunity. *Nissan Fire & Marine*, 210 F.3d at 1102.

It is important to note, Spreadbury did not respond to Snavely's motion by presenting any evidentiary materials to rebut the City Defendants' showing. Thus, Spreadbury has failed to raise a genuine issue of material fact on which a violation of Spreadbury's First Amendment right to peaceable assembly could be found.

Even if Spreadbury could present evidence of a constitutional violation, the circumstances of Snavely's conduct in responding to a call for assistance at the library and "accusing" Spreadbury of trespassing entitle him to qualified immunity. Because First Amendment rights are not absolute and are subject to reasonable restrictions under state law, Snavely's conduct did not violate a clearly established constitutional right of which a reasonable person would have known. A reasonable officer in Snavely's position could not have known that what he was

doing violated a constitutional right. Therefore, Snavely is entitled to qualified immunity, and the summary judgment motion should be granted in this respect.

### (2) **Bruner-Murphy**

Spreadbury alleges Bruner-Murphy is liable for investigating a claim that Spreadbury was stalking the director of the Bitterroot Public Library. Specifically, he claims Bruner-Murphy found that Spreadbury's website identified a "sighting" of the library director, and Bruner-Murphy sent that information to Defendant Bell for consideration of criminal charges against Spreadbury. Spreadbury alleges Bruner-Murphy's conduct violated his First Amendment right to freedom of speech, and constituted an abuse of power in violation of the Fourteenth Amendment. Dkt. 90 at 30-31.

The City Defendants have filed a copy of Bruner-Murphy's police report regarding his investigation of allegations of stalking by Spreadbury. Dkt. 158-2. The report establishes that on July 15, 2009, Bruner-Murphy responded to a complaint from the library director, Gloria Langstaff, that Spreadbury was stalking her. Langstaff expressed her desire to make a stalking report based on Spreadbury's actions towards her. Langstaff presented several documents, letters and emails to Bruner-Murphy reflecting or describing Spreadbury's conduct which

Langstaff believed constituted stalking.  Bruner-Murphy noted his likely intention to forward the report to the city attorney for review for possible charges.

The City Defendants assert they are entitled to summary judgment because the factual circumstances of Bruner-Murphy's conduct do not constitute a violation of any constitutional right.  Again, Spreadbury has not responded to this aspect of the City Defendants' motion by presenting evidentiary materials to rebut the City Defendants' showing and establishing the existence of a genuine issue of material fact as to whether Bruner-Murphy violated Spreadbury's First Amendment right to freedom of speech.

Spreadbury also claims Bruner-Murphy engaged in an abuse of power in violation of his Fourteenth Amendment right to due process of law.  The standard for establishing such a substantive due process claim, however, is demanding. *Stoot v. City of Everett*, 582 F.3d 910, 928 (9th Cir. 2009).  Generally, "'only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense' ' and therefore a violation of substantive due process."  *Id*. (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).  Thus, this type of claim under the Fourteenth Amendment "is cognizable only if the alleged abuse of power 'shocks the conscience' and 'violates the decencies of civilized conduct.'"  *Id*. (quoting *County of Sacramento*, 523 U.S. at 846).

The undisputed facts of Bruner-Murphy's conduct in relation to Spreadbury — as established by his police report — establish that he did not act in a manner that "shocks the conscience" or "violates the decencies of civilized conduct." And Spreadbury has not responded to this aspect of the City Defendants' motion by presenting evidentiary materials to rebut the City Defendants' showing and establishing a genuine issue of material fact exists as to whether Bruner-Murphy's conduct violated Spreadbury's right to substantive due process of law.

In sum, Spreadbury has failed to meet his burden in successfully responding to the City Defendants' summary judgment motion regarding Bruner-Murphy. Absent the existence of any constitutional violation, Bruner-Murphy is entitled to qualified immunity for both of Spreadbury's federal claims against him, and summary judgment should be granted in this respect.

### (3)    Oster

Oster was involved in a separate incident stemming from Spreadbury's conduct at the Ravalli Republic's business office in Hamilton.[9]  The City Defendants have filed a copy of a police report prepared by Officer R. W. Jessop in which Officer Jessop describes his personal observations of Oster's conduct at the Ravalli Republic office.  Dkt. 158-6.  That report reflects that on July 9, 2009,

_____

[9]Defendant Lee Enterprises, Inc. publishes the local newspaper in Hamilton called the Ravalli Republic.

Oster responded to a call from a staff person at the Ravalli Republic's office requesting that the police remove Spreadbury from the office. Oster discussed the situation with Spreadbury, and met with John Cramer, the editor of the Ravalli Republic. Oster directed Spreadbury to listen to Cramer's request, and Cramer proceeded to inform Spreadbury that he did not want Spreadbury on the Ravalli Republic's property. Dkt. 158-6 at 3.

In response to the City Defendants' summary judgment motion, Spreadbury asserts only a limited argument regarding Oster's conduct. He argues that Oster deprived Spreadbury of his "liberty interest to enter" the Ravalli Republic's office. Dkt. 170 at 7. Spreadbury does not identify or present any additional facts in support of his claim against Oster.

Based on Spreadbury's summary judgment response, the Court deems the facts of Oster's conduct at the Ravalli Republic office as undisputed. Those facts reflect that Oster responded to a call to assist in removing Spreadbury from the RavallI Republic's private property as requested by Cramer, acting as an agent of Lee Enterprises, Inc., the rightful occupant of that property. Taking all the facts in the light most favorable to Spreadbury, the Court concludes Spreadbury has not shown that these facts reflect the violation of any constitutional right guaranteed to

Spreadbury.  Thus, Oster is entitled to qualified immunity against liability for this conduct, and summary judgment should be granted in this respect.

### c.    <u>Defendant Steele</u>

Defendant Jerry Steele is the Mayor of the City of Hamilton.  Spreadbury asserts Steele is liable for defamation.  Spreadbury does not expressly advance any other federal claim against Steele.

As noted, however, a state actor's defamatory statements do not rise to the level of a violation of an individual's constitutional rights remediable under 42 U.S.C. § 1983.  *Paul*, 424 U.S. at 712; *Johnson*, 799 F.2d at 1399.  Therefore, Steele has satisfied his summary judgment burden establishing, as a matter of law, that he did not violate Spreadbury's constitutional rights by his alleged defamatory statement.

Spreadbury did not respond to this aspect of the City Defendants' summary judgment motion.  He has not identified any facts or asserted any legal theory on which liability could be imposed against Steele under 42 U.S.C. § 1983 for his conduct.  Thus, the Court concludes Steele is entitled to qualified immunity with respect to this claim, and summary judgment should be granted in his favor.

## 2. Defendants Bell and Lint

Spreadbury seeks to impose liability upon Hamilton City Attorney Kenneth Bell and his deputy, Jennifer Lint, under 42 U.S.C. § 1983 for prosecuting criminal charges against him for trespassing on public property at the library on August 20, 2009. Bell and Lint, of course, claim they are entitled to prosecutorial immunity from Spreadbury's claim.

Prosecutors are entitled to absolute immunity from liability under 42 U.S.C. § 1983 when they are "performing the traditional functions of an advocate" for the State. *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997); and *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993). Thus, prosecutors are immune from liability "when they engage in prosecutorial acts, which the Supreme Court has defined as those activities 'intimately associated with the judicial phase of the criminal process.'" *Lacey v. Maricopa County*, 649 F.3d 1118, 1127 (9th Cir. 2011) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976)). They are immune "for actions that are connected with the prosecutor's role in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 494 (1991), and which are taken in the exercise of their professional judgment as an advocate relative to the judicial proceedings. *Kalina*, 522 U.S. at 130. Prosecutorial conduct that qualifies for immunity protection includes

conduct in "prepar[ing] to initiate a judicial proceeding[.]" *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (citing *Burns*, 500 U.S. at 492).

Bell and Lint's conduct in prosecuting Spreadbury falls squarely within the doctrine of prosecutorial immunity. Therefore, they have satisfied their summary judgment burden establishing, as a matter of law, that they are entitled to immunity. *Nissan Fire & Marine*, 210 F.3d at 1102.

Spreadbury has not responded to Bell and Lint's summary judgment motion asserting the factual and legal grounds for the application of the doctrine of prosecutorial immunity. Spreadbury has failed to present evidence that suggests that in their dealings with Spreadbury either Bell or Lint engaged in conduct that was not "intimately associated with the judicial phase of the criminal process." *Imbler,* 424 U.S. at 430. Consequently, Bell and Lint are entitled to judgment as a matter of law.

### 3. City of Hamilton and Bitterroot Public Library - Liability Under 42 U.S.C. § 1983

A county or municipal governmental entity — such as the City of Hamilton and the Bitterroot Public Library — qualifies as a "person" within the meaning of 42 U.S.C. § 1983, and can be sued for damages under that statute. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978). But, a plaintiff must demonstrate that the municipality itself acted deliberately or culpably, and that there is a direct

causal link between the municipality's action and the deprivation of a federal right. *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). Significantly, "municipalities are only liable under Section 1983 if there is, at minimum, an underlying constitutional tort." *Johnson v. City of Seattle*, 474 F.3d 634, 638-39 (9th Cir. 2007) (citing *Monell*, 436 U.S. at 691).

Spreadbury argues — in conclusory fashion — that both the City of Hamilton and the Bitterroot Public Library are liable for policies and practices they followed. In his discovery responses and argument in opposition to summary judgment Spreadbury identifies only the actions of Defendants Bell and Oster in effecting municipal policies that violated his constitutional rights.

For the reasons discussed above, however, both Bell and Oster — and for that matter all of the City Defendants — have successfully established that they did not engage in any conduct that resulted in the deprivation of any of Spreadbury's consitutional rights. Thus, absent evidence of an underlying constitutional violation, neither the City of Hamilton, nor the Bitterroot Public Library can be held liable under *Monell* and 42 U.S.C. § 1983.

### 4. Injunctive Relief

Spreadbury seeks injunctive relief against Defendants Bitterroot Public Library and City of Hamilton. With respect to the Bitterroot Public Library,

Spreadbury requests that the Court reinstate his library privileges, and make his submission to the Bitterroot Public Library a permanent addition to the library's collection.

The Court has authority to grant prospective injunctive relief to remedy an ongoing violation of federal law. *Virginia Office for Protection and Advocacy v. Stewart*, 131 S. Ct. 1632, 1639 (2011) (discussing *Ex parte Young*, 209 U.S. 123 (1908)). To establish he is entitled to injunctive relief, Spreadbury would have to prevail on at least one of his federal claims, e.g. his procedural due process claim under the 14th Amendment, thereby demonstrating an ongoing violation of federal law. As discussed, however, Spreadbury's claims as to his library privileges and his submission to the library fail as a matter of law. Therefore, he is not entitled to injunctive relief.

With respect to the City of Hamilton, Spreadbury asserts that "[f]or fear of future harm," he requests that the Court enjoin the City of Hamilton from violating his established rights in the future. Spreadbury, however, is not entitled to the injunctive relief he requests because "[i]njunctions that broadly order the enjoined party simply to obey the law [...] are generally impermissible." *Rocky Mountain Christian Church v. Board of County Commissioners of Boulder County*, 612 F. Supp. 2d 1157, 1161 (D. Colo. 2009) (quoting *N.L.R.B. v. U.S. Postal Service*, 486

F.3d 683, 691 (10th Cir. 2007) (Tymkovich, J. concurring and citing cases)). The courts lack authority to impose injunctive relief which broadly requires a person to simply obey the law. *See N.L.R.B. v. Express Publishing Co.*, 312 U.S. 426, 435-36 (1941).

### 5.    Punitive Damages

The City Defendants move for summary judgment dismissing Spreadbury's claim for punitive damages. Because the Court recommends dismissal of all of Spreadbury's claims under 42 U.S.C. § 1983 against the City Defendants, his claim for punitive damages cannot survive. Consequently, this aspect of the City Defendants' motion is properly denied as moot.

### C.  Claims Under Montana Law

Spreadbury has properly invoked the federal question jurisdiction of this Court under 28 U.S.C. § 1331 by advancing a claim under 42 U.S.C. § 1983 against the Defendants in this action. Thus, the Court possesses supplemental jurisdiction under 28 U.S.C. § 1367(a) over Spreadbury's claims founded in Montana law. In exercising supplemental jurisdiction over state law claims, the Court must apply state substantive law to the same extent as if it were exercising diversity jurisdiction. *Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000).

1. **Prosecutorial Immunity**

The City Defendants request judgment as a matter of law with respect to Spreadbury's claims advanced under Montana law against Defendants Bell and Lint. They assert Bell and Lint are protected from liability under the doctrine of prosecutorial immunity recognized under Montana law. The Court agrees.

Under Montana law, prosecutorial immunity protects "participants in the judicial process whose functions are closely associated with those of judicial officers[,]" and whose actions are taken in their quasi judicial capacities. *Rosenthal v. County of Madison*, 170 P.3d 493, 499 (Mont. 2007) (citation omitted). Thus, prosecutors are entitled to absolute immunity "when their judgments and conduct are functionally comparable to those implemented by judges." *Id*. In determining whether a prosecutor's actions were taken in his or her prosecutorial capacity, the Montana Supreme Court follows a functional approach similar to the that of the United States Supreme Court. *Kelman v. Losleben*, 894 P.2d 955, 957 (Mont. 1995) (citing *Imbler v. Pachtman,* 424 U.S. 409 (1976)). Under the functional approach, a prosecutor's conduct in filing and maintaining criminal charges falls within the scope of those duties that entitle a prosecutor to absolute immunity from civil liability, regardless of any negligence. *Rosenthal*, 170 P.3d at 499 (citation omitted). Finally, prosecutorial immunity

extends to protect against the vicarious liability of the governmental entity that employs the prosecutor. *Rahrer v. Board of Psychologists*, 993 P.2d 680, 682 (Mont. 2000) (citing *State ex rel Department of Justice v. District Court*, 560 P.2d 1328, 1330 (Mont. 2000)).

As discussed above, Spreadbury's sole claims against Bell and Lint stem from their conduct in prosecuting Spreadbury for criminal offenses — conduct that was "intimately associated with the judicial phase of the criminal process." *Imbler,* 424 U.S. at 430. Again, Spreadbury did not meet his burden in opposing summary judgment to demonstrate Bell and Lint are not entitled to prosecutorial immunity. Consequently, all of Spreadbury's claims advanced under Montana law against Bell and Lint should be dismissed. Additionally, to the extent Spreadbury asserts the City of Hamilton is vicariously liable for Bell and Lint's conduct, those claims are also subject to dismissal.

### 2.    Negligence

Spreadbury alleges that a number of the City Defendants acted negligently in their dealings with him rendering those Defendants liable under various theories of negligence. Spreadbury alleges that Defendants Snavely and Bruner-Murphy are liable for negligently investigating accusations of criminal conduct committed by Spreadbury, and preparing police reports following those investigations.

Separately, he alleges that Library Board Chairman Brophy and the Bitterroot Public Library are liable for negligently revoking Spreadbury's library privileges.

The common and statutory law of Montana impose a duty upon all individuals to "use the degree of care that an ordinarily prudent person would have used under the same circumstance." *Barr v. Great Falls International Airport Authority*, 107 P.3d 471, 477 (Mont. 2005); Mont. Code Ann. § 27-1-701. The failure to exercise reasonable care is negligence. Establishment of a legal duty is a prerequisite to a claim of negligence because there can be no negligence in the absence of a legal duty owed by a defendant to a claimant. *Slack v. Landmark Co.*, 267 P.3d 6, 10 (Mont. 2011). *See also Peterson v. Eichhorn*, 189 P.3d 615, 620-21 (Mont. 2008). The question of whether a legal duty exists is an issue of law for the court to decide. *Slack*, 267 P.3d at 10.

The City Defendants move for summary judgment dismissing Spreadbury's claims for negligence on the narrow ground that Spreadbury cannot establish the existence of any legal duty that the City Defendants owed Spreadbury, either with respect to the officers' investigations of his reported criminal activity, or his use of the public library.[10] It is important to emphasize that the City Defendants argue

---

[10]Spreadbury also alleges Defendants Bell and the City of Hamilton are liable for negligently prosecuting him for criminal trespass. That claim, however, is barred by the doctrine of prosecutorial immunity. *Supra*, at 36-37.

only that they owed no legal duty to Spreadbury upon which a claim of negligence could be based and that they are protected from suit on Spreadbury's negligence claims by the "public duty doctrine." They do not present the alternate argument that Spreadbury's claims fail because the undisputed evidence of record establishes the individual Defendants acted with the requisite degree of care.

### a. Defendants Snavely and Bruner-Murphy

Spreadbury alleges Defendant Snavely acted negligently when he investigated Spreadbury for, and accused him of, criminal trespass at the Bitterroot Public Library on August 20, 2009. Separately, Spreadbury alleges Defendant Bruner-Murphy was negligent when he investigated a claim that Spreadbury was stalking the director of the Bitterroot Public Library, and when he prepared police reports regarding his investigations. The City Defendants move for summary judgment on the sole, narrow ground that there exists no legal duty that either Snavely or Bruner-Murphy owed Spreadbury in conducting their respective criminal investigations on which he can base a claim of negligence.

As noted, Montana law imposes a duty upon all individuals "to use the degree of care that an ordinarily prudent person would have used under the same circumstance." *Barr*, 107 P.3d at 477. This basic duty of care applies to the

conduct of Snavely and Bruner-Murphy in investigating the allegations of criminal conduct against Spreadbury.

The only argument presented by Snavely and Bruner-Murphy in support of their motion for summary judgment on Spreadbury's negligence claims against them is that the claims are barred by the "public duty doctrine."[11] But that doctrine is simply inapplicable.

The "public duty doctrine" in Montana provides that "a governmental entity cannot be held liable for an individual plaintiff's injury resulting from a governmental officer's breach of a duty owed to the general public rather than to the individual plaintiff." *Eklund v. Trost*, 151 P.3d 870, 878 (Mont. 2006) (quoting *Massee v. Thompson*, 90 P.3d 394, 403 (Mont. 2004)). The doctrine "serves the important purpose of preventing excessive court intervention into the governmental process by protecting the exercise of law enforcement discretion."

---

[11]The Montana Supreme Court has not addressed the specific issue of whether the public duty doctrine would bar a claim for negligent criminal investigation. Because the Montana Supreme Court has not addressed this issue of state law, this Court "must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002) (citations omitted). In making that prediction the Court looks to existing state law "without predicting potential changes in that law[,]" *Ticknor v. Choice Hotels International, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) (citation omitted), and to "decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 865 (9th Cir. 1996) (quotations omitted).

*Nelson v. Driscoll*, 983 P.2d 972, 977 (Mont. 1999) (quotation and citation omitted).

The public duty doctrine generally deals with situations where a law enforcement officer allegedly breaches a general duty to protect the public by failing to protect a specific plaintiff against an injury caused by a third party or other independent source. *See Gonzales v. City of Bozeman*, 217 P.3d 487, 491 (Mont. 2009). *See also, e.g. Jones v. State*, 2012 WL 555569, *10 (Md. 2012) (citing *Strickland v. University of North Carolina at Wilmington*, 712 S.E.2d 888, 892 (N.C. App. 2011)); *Liser v. Smith*, 254 F. Supp. 2d 89, 102 (D.D.C. 2003). In contrast, the public duty doctrine is inapplicable where a law enforcement officer is not merely performing a general duty to protect citizens from private harms, but is instead acting affirmatively towards a plaintiff and is, him or herself, the injurious force that caused harm to the plaintiff. *See Jones*, 2012 WL 555569 at *11; *Liser*, 254 F. Supp. 2d at 102 ("The claim that the government has no general duty to protect particular citizens from injury is simply a non-sequitur where the government itself is solely responsible for that injury, which it has caused by the allegedly negligent use of its own police powers.").

Spreadbury's claims allege that Snavely and Bruner-Murphy's own conduct in investigating Spreadbury's alleged criminal activities and preparing police

reports was, itself, the injurious force that caused harm to him. Consequently, the public duty doctrine is inapplicable under the circumstances of Spreadbury's claims of negligence.[12]

The City Defendants also assert that Snavely and Bruner-Murphy are entitled to immunity from individual liability under the provisions of Mont. Code Ann. § 2-9-305(5). They are correct.

Section 2-9-305 provides governmental employees with immunity against state law claims as follows:

> In an action against a governmental entity, the employee whose conduct gave rise to the suit is immune from liability by reasons of the same subject matter if the governmental entity acknowledges or is bound by a judicial determination that the conduct upon which the claim is brought arises out of the course and scope of the employee's employment, unless [certain exclusions from immunity are applicable.]

---

[12]The Court notes that all courts are not in agreement on this point. The State of Washington, for example, broadly applies the public duty doctrine to preclude claims of negligent investigation pled against police officers. *See e.g. Laymon v. Washington State Department of natural Resources*, 994 P.2d 232, 239 (Wash. App. Div. 2 2000); *Rodriguez v. Perez*, 994 P.2d 874, 877 (Wash. App. Div. 1 2000) (discussing public duty doctrine). Having reviewed the decisional law of Montana, the Court is confident the Montana Supreme Court would follow the more reasoned approach taken in those jurisdictions which recognize that the public duty doctrine does not apply where the police officers themselves are alleged to have inflicted injury upon a plaintiff. *See supra*, n. 11. And the Montana Supreme Court would conclude that the public duty doctrine does not protect a law enforcement officer from liability for harm caused by a negligent criminal investigation to the subject of the investigation. *See Liser*, 254 F. Supp. 2d at 101-102.

Mont. Code Ann. § 2-9-305(5).

Consistent with section 2-9-305(5), the Montana Supreme Court has confirmed as follows:

> [W]here an action is brought against a county based on actionable conduct by an employee, the employee is immune from individual liability for the conduct if the county acknowledges that the conduct arose out of the course and scope of the employee's official duties.

*Kenyon v. Stillwater County*, 835 P.2d 742, 745 (Mont. 1992), overruled on other grounds by *Heiat v. Eastern Montana College*, 912 P.2d 787, 793 (Mont. 1996).

*See also Germann v. Stephens*, 137 P.3d 545, 553 (Mont. 2006).

The City of Hamilton acknowledges that Spreadbury's state law negligence claims against Snavely and Bruner-Murphy are based upon conduct taken by them in the course and scope of their employment. Dkt. 98 at 22, ¶ 2; Dkt. 151 at 19. Consequently, Snavely and Bruner-Murphy are immune under Mont. Code Ann. § 2-9-305(5) from individual liability for Spreadbury's negligence claims, and the City Defendants' motion should be granted in this respect. The City of Hamilton, however, remains responsible for any damages that may be awarded in the event Spreadbury prevails upon his claims of negligence predicated upon the conduct of Snavely and Bruner-Murphy. Mont. Code Ann. § 2-9-102.

In sum, the City Defendants' summary judgment motion fails, in part, as to Spreadbury's foregoing claims of negligence. Contrary to their arguments, an

applicable legal duty exists, and the public duty doctrine does not bar Spreadbury's allegations as to Snavely and Bruner-Murphy's conduct. Although Snavely and Bruner-Murphy are immune from individual liability, the City Defendants' motion for summary judgment should be denied to the extent Spreadbury's negligence claims can be advanced against the City of Hamilton.

### b. The Library Board Defendants

Alluding to Mont. Code Ann. § 22-1-311, Spreadbury asserts that Library Board Chairman Brophy acted negligently in revoking Spreadbury's right to use the library, thus rendering both Brophy and the Bitterroot Public Library ("Library Board Defendants") liable to him. Section 22-1-311 provides:

> Every library established under the provisions of this part shall be free to the use of the inhabitants of the city or the county supporting such library. The board may exclude from the use of the library any and all persons who shall willfully violate the rules of the library.

Clearly the statute vests the board of trustees of a public library with the discretionary authority to exclude a person using the library for willfully violating library rules. *See* Mont. Code Ann. §§ 22-1-308 and 309.

Contrary to the position advocated by the Library Board Defendants, the Court concludes, as a matter of law, that Mont. Code Ann. § 22-1-311 imposes a duty of care — a duty "to exercise the level of care that a reasonable and prudent person would under the same circumstances" (*Fisher v. Swift Transportation Co.,*

44

*Inc.*, 181 P.3d 601, 606-607 (Mont. 2008)) — on the Bitterroot Public Library's Board of Trustees in acting affirmatively to exclude an eligible individual from using a public library.[13]

The Library Board Defendants similarly invoke the "public duty doctrine" to argue that any duty created by Mont. Code Ann. § 22-1-311 runs to the public in general — not to any specific individual who may be excluded from using a public library. *See Nelson v. State*, 195 P.3d 293, 300 (Mont. 2008). But again, their reliance on the public duty doctrine is misplaced under the circumstances of this case. In excluding Spreadbury from using the library, the Board of Trustees of the Bitterroot Public Library acted affirmatively and directly as to Spreadbury. Thus, under the law of the "public duty doctrine" discussed above, the doctrine is inapplicable to the Library Board Defendants' conduct which forms the basis of Spreadbury's negligence claims advanced against them.

It is true, as the Library Board Defendants argue, that a local governmental entity is under no duty to establish a public library. But the focus of the present inquiry is whether, once a public library is established, a library board has a duty to act with due care in exercising its discretionary authority to exclude an

---

[13]The Montana Supreme Court has not addressed the specific issue of whether section 22-1-311 imposes this duty of care. The Court must therefore undertake to predict the conclusion that court would reach on the issue. *See supra*, n. 11.

otherwise eligible individual from using a public library. As stated, the Court

concludes this duty exists as a matter of law.

Next, to the extent Spreadbury seeks to impose liability upon Chairman

Brophy individually, Brophy asserts he is entitled to immunity from individual

liability under Mont. Code Ann. § 2-9-305(5). Chairman Brophy is correct.

In addition to Chairman Brophy, Spreadbury has named the Bitterroot

Public Library as a defendant. The Library expressly invokes the immunity

provisions of Mont. Code Ann. § 2-9-305(5), and acknowledges that Spreadbury's

state law claims against Brophy are based upon conduct taken by him in the course

and scope of his employment. Dkt. 98 at 22, ¶ 2; Dkt. 151 at 19. Consequently,

Brophy is immune from individual liability for Spreadbury's state law claims. *See*

*Germann v. Stephens*, 137 P.3d 545, 553 (Mont. 2006). And the Library is

responsible for any damages that may be awarded Spreadbury upon his claim of

negligence based upon Brophy's conduct. Mont. Code Ann. § 2-9-102.

For the reasons stated, the Library Board Defendants' summary judgment

motion fails because a legal duty exists for purposes of Spreadbury's negligence

claim, and the public duty doctrine does not bar that claim. Brophy is immune

from individual liability, but the Bitterroot Public Library would be liable for

Brophy's conduct if such liability is found. The summary judgment motion should be denied in this respect.

### c.    <u>Negligent Misrepresentation</u>

Spreadbury also advances a claim of negligent misrepresentation against Defendants Brophy and Bitterroot Public Library. The Court will address this claim in the context of the City Defendants' motion requesting dismissal of Spreadbury's negligence claims because negligent misrepresentation is the "failure to use reasonable care or competence in obtaining or communicating ... information." *Jackson v. State*, 956 P.2d 35, 43 (Mont. 1998) (quotation and citation omitted).

Under Montana law, the tort of negligent misrepresentation consists of numerous elements, including the following:

> a) the defendant made a representation as to a past or existing material fact; [and] b) the representation must have been untrue[.]

*Deichl v. Savage*, 216 P.3d 749, 753 (Mont. 2009).

Spreadbury's misrepresentation claim is predicated upon a letter Defendant Brophy wrote to Spreadbury dated February 23, 2010. Spreadbury contends that Brophy misrepresented to Spreadbury the authority of the Bitterroot Public Library Board of Trustees to terminate an individual's library privileges, and to ban an individual from the library.

Brophy filed an affidavit stating he did not write a letter dated February 23, 2010. Dkt. 152-6 at 4, ¶ 10. Instead, Brophy asserts he sent a letter to Spreadbury dated August 20, 2009, in which Brophy stated the Board of Trustees "supported [the] decision to prohibit [Spreadbury's] entry onto Library property." *Id*.

Brophy has satisfied his summary judgment burden of negating an element of Spreadbury's misrepresentation claim. He has asserted there does not exist any letter dated February 23, 2010, that he wrote. Therefore, he has negated the false representation element of Spreadbury's claim.

In response to the City Defendants' motion for summary judgment, Spreadbury has failed to present any evidence of any untrue representation made by Brophy. Having failed to satisfy his burden in these summary judgment proceedings, Spreadbury's claim of misrepresentation should be dismissed.

### 3.  Abuse of Process

In Count 2 of his 2nd Amended Complaint Spreadbury alleges that Defendant Brophy's conduct in terminating Spreadbury's library privileges gives rise to liability under a common law claim for abuse of process. The City Defendants request summary judgment dismissing this claim.

Under Montana law, an abuse of process claim requires a plaintiff to "show both '(1) an ulterior purpose and (2) a willful act in the use of process not proper

in the regular conduct of the proceeding.'" *Ammondson v. Northwestern Corp.*, 220 P.3d 1, 15 (Mont. 2009) (quoting *Hughes v. Lynch*, 164 P.3d 913, 919 (Mont. 2007)). The City Defendants assert Spreadbury does not have evidence to support these elements of his abuse of process claim. *Nissan Fire & Marine*, 210 F.3d at 1102.

Spreadbury did not respond to this aspect of the City Defendants' motion. Thus, he did not provide any evidence or arguments in support of his abuse of process claim.

As a matter of law, an abuse of process claim can only arises from, and in the context of, the process of a legal or judicial proceeding in a court of law. *See Seipel v. Olympic Coast Investments*, 188 P.3d 1027 (Mont. 2008) (addressing abuse of process claim which arose from conduct that occurred in prior litigation in federal court); and *Judd v. Burlington Northern and Santa Fe Railway Co.*, 186 P.3d 214 (Mont. 2008) (same).

Here, Spreadbury's allegations against Brophy and the circumstances of this case as presented on summary judgment establish that Brophy's conduct in terminating Spreadbury's library privileges did not occur in any prior legal or judicial proceeding that occurred in a court of law. Absent the existence of any

prior qualifying legal proceeding, Spreadbury's claim for abuse of process fails as a matter of law.

### 4. **Malicious Prosecution**

Spreadbury advances a claim for malicious prosecution against Defendants Bitterroot Public Library and City of Hamilton in relation to his prosecution for misdemeanor criminal trespass. For the reasons discussed, however, the City Defendants are entitled to summary judgment on this claim.

A cause of action for malicious prosecution requires a plaintiff to present evidence sufficient to prove the following six elements:

(1) a judicial proceeding was commenced and prosecuted against the plaintiff;

(2) the defendant was responsible for instigating, prosecuting or continuing such proceeding;

(3) there was a lack of probable cause for the defendant's acts;

(4) the defendant was actuated by malice;

(5) the judicial proceeding terminated favorably for plaintiff; and

(6) the plaintiff suffered damage.

*Plouffe v. Montana Dept. of Public Health and Human Services*, 45 P.3d 10, 14 (Mont. 2002).

The City Defendants argue, in part, that Spreadbury's malicious prosecution claim is subject to dismissal because the prosecution for criminal trespass did not terminate favorably for Spreadbury. The termination of a prosecution in favor of the plaintiff must constitute a termination on the merits of the prosecution. *Sacco v. High Country Independent Press, Inc.*, 896 P.2d 411, 431-33 (Mont. 1995) (quoting *Miller v. Watkins*, 653 P.2d 126, 130 (Mont. 1982)). It is undisputed that during the pendency of Spreadbury's appeal of his conviction in city court for criminal trespass, Defendants Bell and Lint moved for, and obtained a dismissal of that criminal charge on August 16, 2010. Although Bell and Lint have explained the reasons for that dismissal, and they argue that those reasons reflect the dismissal was not a termination on the merits of the charge, the Court finds the City Defendants have failed to meet their summary judgment burden of sufficiently establishing, both as a matter of fact and a matter of law, that the dismissal was not based on some underlying insufficiency to the merits of the criminal conviction.

The City Defendants, however, also move for summary judgment on the malicious prosecution claim by asserting Spreadbury cannot establish a lack of probable cause for the criminal trespass charge.[14] The Court agrees.

_____

[14]In support of his malicious prosecution cause of action, Spreadbury refers generally to "a judicial proceeding" that was prosecuted against him, and alleges

Spreadbury alleges he was prosecuted for criminal trespass by way of a sworn complaint filed by Defendant Bell.  Dkt. 90 at ¶¶ 46, 136 and 177.  In their answer to Spreadbury's 2nd Amended Complaint, the City Defendants admit that Bell "filed a criminal complaint against [Spreadbury]."  Dkt. 98 at ¶ 58.

Montana law requires that when a criminal "complaint" is presented to a court, "the court shall examine the sworn complaint or any affidavits, if filed, to determine whether probable cause exists to allow the filing of a charge."  Mont. Code Ann. § 46-11-110.  Thus, probable cause existed as a matter of law to allow the filing of the criminal complaint against Spreadbury.  Consequently, the City Defendants have satisfied their summary judgment burden by negating the third element of Spreadbury's malicious prosecution claim.  *Nissan Fire & Marine*, 210 F.3d at 1102.

---

the judicial proceeding "terminated favorably for Spreadbury."  Dkt. 90 at ¶¶ 124-130.  The record in this case reflects Spreadbury was criminally prosecuted for, and convicted of, both intimidation and criminal trespass.  Spreadbury's intimidation conviction stands, while the criminal trespass charge was dismissed after Spreadbury's conviction on that charge.  Thus, the only "judicial proceeding" which arguably terminated in Spreadbury's favor was the criminal trespass prosecution.

In response to the City Defendants' summary judgment motion, Spreadbury does not assert that his malicious prosecution claim stems from any judicial proceeding other than his prosecution for criminal trespass.  Therefore, the Court will analyze Spreadbury's malicious prosecution claim only in the context of his criminal trespass prosecution.

Spreadbury has not responded to this aspect of the City Defendants' motion, and he has presented no evidentiary materials in support of his malicious prosecution claim. Significantly, Spreadbury does not argue that the City Defendants lacked probable cause for the criminal trespass charge, nor could he in view of Mont. Code Ann. § 46-11-110. Thus, the City Defendants are entitled to judgment on Spreadbury's malicious prosecution claim as a matter of law.

## 5. Tortious Interference with Prospective Economic Advantage

The City Defendants move for summary judgment dismissing Spreadbury's common law claim for tortious interference with prospective economic advantage. The Court finds the motion has merit.

Under Montana law, the elements of a cause of action for tortious or intentional interference with prospective economic advantage require that a defendant's acts: "(1) are intentional and willful; (2) are calculated to cause damage to the plaintiff's business; (3) are done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor; and (4) result in actual damages or loss." *Maloney v. Home and Investment Center, Inc.*, 994 P.2d 1124, 1132 (Mont. 2000).

The City Defendants assert Spreadbury has not presented any evidence establishing any economic or business interest of his that sustained damage, or that

their conduct caused any damage to those interests.  Their assertions satisfy their summary judgment burden.  *Nissan Fire & Marine*, 210 F.3d at 1102.

Again, Spreadbury has not responded to this aspect of the City Defendants' motion.  Spreadbury has failed to present evidence raising a genuine issue of material fact suggesting the existence of any business or economic interest he had which the City Defendants allegedly damaged.  Absent evidence in support of his claim, the City Defendants are entitled to summary judgment.

###     6.    Defamation

Spreadbury's 2nd Amended Complaint includes claims of defamation.  In response to the City Defendants' discovery requests, Spreadbury identified only a statement made by Defendant Jerry Steele, and statements made by Defendant Boone Karlberg, P.C.[15] as the grounds in support of his defamation claims in Count 17 of his 2nd Amended Complaint.  The City Defendants now move for judgment dismissing Spreadbury's defamation claims in Count 17.

Under Montana law, defamation occurs through either libel or slander.[16] Mont. Code Ann. § 27-1-801.  In general, liability for libel and slander can arise

---

[15]By Order entered September 27, 2011, the Court dismissed all of Spreadbury's claims against Defendant Boone Karlberg, P.C.  Dkt. 107.

[16]"Slanderous words are spoken words, whereas libelous words are written." *Tindall v. Konitz Contracting, Inc.*, 783 P.2d 1376, 1382 (Mont. 1989).

from a false and unprivileged publication or statement made about a person which

causes harm to that person.  Mont. Code Ann. §§ 27-1-802 and 803.  Specifically,

> [l]ibel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation that exposes any person to hatred, contempt, ridicule, or obloquy or causes a person to be shunned or avoided or that has a tendency to injure a person in the person's occupation.

Mont. Code Ann. § 27-1-802.

In turn, slander is defined, in part, as a false and unprivileged publication

other than libel that:

> (2) imputes in a person the present existence of an infectious, contagious, or loathsome disease;
>
> [... or]
>
> (5) by natural consequence causes actual damage.

Mont. Code Ann. § 27-1-803.

Spreadbury asserts Defendant Jerry Steele is liable for defamation because

Steele stated "that he had knowledge that [Spreadbury] is Schizophrenic[.]"  Dkt.

90 at 19.  Steele moves for summary judgment dismissing this claim by disputing

the substance of the actual statement he made.  Steele presented his affidavit

testimony establishing that he stated that "Spreadbury's behavior is inconsistent,

and that sometimes 'he acts like a schizophrenic.'"  Dkt. 155-4 at 2, ¶ 5.  Steele

states he has no personal knowledge of Spreadbury's medical or emotional

conditions, and that he was merely expressing an opinion based on Spreadbury's inconsistent behavior. *Id*. at 3, ¶¶ 6 and 7.

A claim of defamation can be resolved by the court on summary judgment if the court concludes the statement at issue is not capable of bearing a defamatory meaning. *McConkey v. Flathead Electric Cooperative*, 125 P.3d 1121, 1129-30 (Mont. 2005) (citations omitted). The test for defamatory meaning is stringent, and a mere expression of an opinion does not carry defamatory meaning. *Id*. 125 P.3d at 1130. Specifically, where a statement of an opinion discloses the facts on which it is based, and where it is established that the opinion is not based upon undisclosed defamatory facts, then the opinion cannot qualify as defamatory. *Id*. 125 P.3d at 1130-31.

Based on Steele's affidavit, the record establishes that Steele's opinion stating that Spreadbury acts like a schizophrenic was based on Spreadbury's past inconsistent behavior, and Steele disclosed that basis in the course of expressing his opinion. There exists no reasonable inference that the opinion was based on any undisclosed defamatory facts. Therefore, in accordance with *McConkey*, Steele's opinion does not bear any defamatory meaning and, as a matter of law, cannot qualify as defamation. Thus, the City Defendants have met their summary judgment burden defeating an element of Spreadbury's claim.

Spreadbury does not present any evidence raising a genuine issue of material fact in support of his claim of defamation.[17]  The City Defendants are entitled to summary judgment dismissing Count 17 of the 2nd Amended Complaint.

## 7. Negligent and Intentional Infliction of Emotional Distress

The City Defendants move for summary judgment dismissing Spreadbury's claims of negligent and intentional infliction of emotional distress.  The Court agrees that the claims are subject to dismissal.

In *Sacco v. High Country Independent Press, Inc.*, 896 P.2d 411 (Mont. 1995), the Montana Supreme Court recognized independent causes of action for negligent or intentional infliction of emotional distress.  The Court, however, established a heightened standard of proof for these stand-alone causes of action, holding that they:

> will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent or intentional act or omission.

---

[17]The Court recognizes that in opposing summary judgment Spreadbury asserts there exists a witness who could present testimony as to the actual statement Steele made.  As discussed above, however, Spreadbury failed to properly support his motion for a continuance of these summary judgment proceedings under Fed. R. Civ. P. 56(d).  At this juncture, Spreadbury has not presented any affidavit testimony in opposition to the City Defendants' summary judgment motion on the claim of defamation against Steele.

*Sacco*, 896 P.2d at 429. With respect to either cause of action, the plaintiff must ultimately prove that the emotional distress was "so severe that no reasonable person could be expected to endure it." *Lorang v. Fortis Ins. Co.*, 192 P.3d 186, 222 (Mont. 2008) (quoting *Sacco*, 896 P.2d at 425-426, 428-29). *See also Renville v. Fredrickson*, 101 P.3d 773, 775-76 (Mont. 2004) (discussing standard for severity and seriousness). The Montana Supreme Court has identified various specific conditions which may qualify as serious or severe emotional distress. *Sacco*, 896 P.2d at 426.

*Sacco*'s heightened standard of proof requires "that a plaintiff claiming intentional or negligent infliction of emotional distress must make a threshold showing to the court that their emotional distress is 'serious or severe' in order to proceed to trial." *Jacobsen v. Allstate Ins. Co.,* 215 P.3d 649, 663 (Mont. 2009) (citing *Sacco*, 896 P.2d at 427). In determining whether the threshold is satisfied in any particular case, "it is for the court to determine whether[,] on the evidence[,] severe or serious emotional distress can be found; [and, if so,] it is for the jury to determine whether, on the evidence, it has in fact existed." *Sacco*, 896 P.2d at 425 and 429.

The City Defendants assert that Spreadbury has no evidence sufficient to meet his threshold showing required by *Sacco* that he suffered "serious or severe"

emotional distress. They point to a discovery request they submitted to Spreadbury seeking information describing "the alleged emotional distress" that Spreadbury alleged in his pleading, and they note that Spreadbury refused to provide any information in response to that discovery request. Dkt. 151 at 17. Thus, the City Defendants' assertion as to the absence of evidence in support of the emotional distress claims is sufficient to satisfy the City Defendants' summary judgment burden. *Nissan Fire & Marine*, 210 F.3d at 1102.

Spreadbury has not presented any admissible evidentiary material establishing any emotional distress he actually suffered, or that any such emotional distress is severe or serious. Consequently, the City Defendants are entitled to summary judgment dismissing Spreadbury's emotional distress causes of action.

### 8. Injunctive Relief

The City Defendants seek dismissal of Spreadbury's claims for injunctive relief. Under Montana law, injunctive relief can be granted to require "a person to refrain from a particular act." Mont. Code Ann. § 27-19-101. Injunctive relief, however, is limited in that it can be granted "to afford preventive relief only." *Faust v. Utility Solutions, LLC*, 173 P.3d 1183, 1186 (Mont. 2007) (citation omitted). Thus, to the extent the alleged injury stems from past conduct, then an

injunction cannot be granted. *State v. BNSF Railway Company*, 254 P.3d 561, 565 (Mont. 2011).

Spreadbury advances claims for injunctive relief against Defendants Bitterroot Public Library and the City of Hamilton. With respect to the Bitterroot Public Library Spreadbury advances two claims for injunctive relief. First, he requests the Court grant an injunction requiring that the document he submitted to the library be a permanent addition to its collection. Spreadbury does not, however, advance any viable claim under Montana law establishing that the library's conduct in rejecting the documents gives rise to liability under state law. Therefore, that claim for injunctive relief should be denied.

Second, Spreadbury requests injunctive relief reinstating his privilege to access and use the Bitterroot Public Library. For the reasons discussed, the Court concludes that Spreadbury's claim of negligence advanced against the Bitterroot Public Library stemming from a breach of the duty imposed under Mont. Code Ann. § 22-1-311 should survive summary judgment. Therefore, the merits of this associated claim for injunctive relief should also survive summary judgment. The City Defendants' motion should be denied in this respect.

With respect to the City of Hamilton, Spreadbury requests injunctive relief enjoining it from violating his various rights in the future. In support of his claim,

however, Spreadbury identifies only conduct committed by Defendants that occurred in the past which resulted in harms that Spreadbury suffered in the past. Consequently, Spreadbury does not advance any viable claim for future, preventive relief, and the City Defendants' summary judgment motion should be granted in this respect.

### 9. Punitive Damages

The City Defendants move for summary judgment dismissing Spreadbury's claim for punitive damages advanced under Montana law. The Court recommends that this aspect of the motion should be granted only in part.

Defendants City of Hamilton and the Bitterroot Public Library are immune from the imposition of punitive damages as stated in Mont. Code Ann. § 2-9-105. Thus, to the extent Spreadbury alleges those entities are subject to liability for punitive damages for their own conduct, the City Defendants' motion should be granted in this respect.

As stated herein, however, Spreadbury has thus far advanced viable claims of negligence against the City of Hamilton and the Bitterroot Public Library predicated upon Defendants Brophy, Snavely, and Bruner-Murphy's conduct. To address the issue of punitive damages that could be awarded based on that conduct, the City Defendants advance an argument in one sentence suggesting that

Mont. Code Ann. §§ 2-9-105 and 2-9-305 also immunize the City of Hamilton and the Bitterroot Public Library from liability for those punitive damages. The City Defendants, however, did not engage in any analysis of the interplay between the specific provisions of sections 2-9-105 and 305, and their application to the circumstances of this case in reaching their suggested conclusion. Nonetheless, a ruling as to whether those sections protect the City of Hamilton and the Bitterroot Public Library from paying an award of punitive damages stemming from the individual Defendants' conduct is premature, and is more appropriately addressed in the event punitive damages are awarded at trial.

Finally, the City Defendants argue that "it has not been shown" that any act or omission of any individual Defendant constitutes actual malice as required for an award of punitive damages. Mont. Code Ann. § 27-1-221. But, the City Defendants' burden on summary judgment is to establish that Spreadbury does not have enough evidence of an essential element of punitive damages to ultimately carry his burden at trial. *Nissan Fire & Marine*, 210 F.3d at 1102. The City Defendants have failed to met this summary judgment burden in that they have failed to establish that Spreadbury has no evidence of actual malice. Where a movant has failed to meet the initial summary judgment burden, the motion should

be denied regardless of the nonmovant's response.  *Little v. Liquid Air Corp.*, 37

F.3d 1069, 1075 (5th Cir. 1994).

> If a moving party fails to carry its initial burden of production, the
> nonmoving party has no obligation to produce anything, even if the
> nonmoving party would have the ultimate burden of persuasion at trial.
> [Citations omitted.]  In such a case, the nonmoving party may defeat the
> motion for summary judgment without producing anything.

*Nissan Fire & Marine*, 210 F.3d at 1102-03.  Consequently, the City Defendants'

motion for summary judgment dismissing Spreadbury's claim for punitive

damages should be denied.

## IV.    CONCLUSION

Based on the foregoing, IT IS RECOMMENDED that:

1.  The City Defendants' Motion for Summary Judgment on Plaintiff's

Federal Claims be DENIED as moot with respect to Spreadbury's claim for

punitI've damages on the ground that Spreadbury cannot sustain any viable

underlying federal cause of action on which punitive damages could be awarded.

That motion should otherwise be GRANTED, and all of Spreadbury's claims

advanced under federal law should be dismissed.

2.  The City Defendants' Motion for Summary Judgment on Plaintiff's State

Law Claims should be DENIED with respect to:

a.     Spreadbury's claims of negligence pled against the City of Hamilton
       predicated upon Defendants Steve Snavely and Steven Bruner-

Murphy's conduct in investigating accusations of criminal activities in which Spreadbury allegedly engaged (Counts 12 and 13 of the 2nd Amended Complaint);

b. Spreadbury's claims of negligence pled against the Bitterroot Public Library predicated upon Defendant Robert Brophy's conduct in revoking Spreadbury's privilege of accessing and using the Bitterroot Public Library (Count 1 of the 2nd Amended Complaint);

c. Spreadbury's claim for injunctive relief relative to his privilege of access to the Bitterroot Public Library; and

d. Spreadbury's claim for punitive damages under Montana law predicated upon the conduct of Defendants Brophy, Snavely, and Bruner-Murphy.

That motion should otherwise be GRANTED in all other respects, and all of Spreadbury's other claims advanced under Montana law should be dismissed.

DATED this 6th day of March, 2012.

 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge