

FILED

MAY 3 0 2012

PATRICK E. DUFFY, CLERK

By_____
DEPUTY CLERK, MISSOULA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| MICHAEL E. SPREADBURY, | ) | CV 11-64-M-DWM-JCL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| BITTERROOT PUBLIC LIBRARY, | ) | |
| CITY OF HAMILTON, | ) | |
| LEE ENTERPRISES, INC., and | ) | |
| BOONE KARLBERG P.C. | ) | |
| | ) | |
| Defendants. | ) | |

March 6, 2012, United States Magistrate Judge Jeremiah C. Lynch entered

Findings and Recommendations (doc. 250) concerning two summary judgment

motions (docs. 148, 150) filed by Defendants Bitterroot Public Library (the

Library"), City of Hamilton ("the City"), Dr. Robert Brophy, Trista Smith, Nansu

Roddy, Jerry Steele, Steve Snavely, Steven Bruner-Murphy, Ryan Oster, Kenneth

Bell, and Jennifer Lint (collectively, the "Municipal Defendants"). Judge Lynch

recommended the motions be granted in part and denied in part.

Specifically, he determined disputed issues of fact remained as to the

following issues: (1) whether Officer Snavely negligently investigated Plaintiff

Michael E. Spreadbury's purported trespass on Library property on August 20,

2009; (2) whether Officer Bruner-Murphy negligently investigated allegations that

Spreadbury was stalking the Library Director; and (3) whether Robert Brophy, the

Chairman of the Bitterroot Public Library's Board of Trustees, negligently

revoked Spreadbury's library privileges. Because Judge Lynch determined these

negligence claims survived, he also denied summary judgment on Spreadbury's

claims for punitive damages and for injunctive relief relating to access to the

Library.[1]

The Library and the City timely filed objections (doc. 256), and Spreadbury,

proceeding *pro se*, filed a "Response to City, Library Objection to Court Order,

Findings Doc. # 250" (doc. 257). Construed liberally, his filing appears to include

objections to Judge Lynch's findings as well as a response to the arguments of the

---

[1] It is important to note that Judge Lynch did not find any defendant liable for negligence, contrary to Spreadbury's assertions (doc. 257 at 1, 5). When a court denies one party's motion for summary judgment, summary judgment is not automatically granted in favor of the other party.

City and Library. The parties are entitled to *de novo* review of those findings or recommendations to which they object. 28 U.S.C. § 636(b)(1). The portions of the Findings and Recommendation not specifically objected to are reviewed for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).

For the reasons discussed below, Judge Lynch's Findings and Recommendations are adopted in part and rejected in part. Defendants are entitled to summary judgment on all issues.

## I. Spreadbury's Objections

### A. Termination of Library Privileges

Spreadbury was not wrongfully deprived of his statutory and constitutional liberty interest in the right to use a public library when the Library Defendants[2] banned him from the premises. The record demonstrates that he intimidated various library staff and patrons after the Library refused his request to include a letter he had written to President Obama in its collection. We all have a right to use our public libraries. *Kreimer v. Bureau of Police for the Town of Morristown*, 958 F.2d 1242, 1255 (3rd Cir. 1992) (recognizing "the right to some level of

---

[2]The Library Defendants are the Bitterroot Public Library, Robert Brophy, Trista Smith, and Nansu Roddy.

access to a public library, the quintessential locus of the receipt of information").

But the right is not unqualified. *Id.* A person may be constitutionally deprived of

a liberty interest if afforded due process, and Spreadbury was granted adequate

procedural protections. *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 716

(9th Cir. 2011).

> Judge Lynch properly identified the Library as a limited public forum.

> [A]s a limited public forum, the Library is obligated only to permit the
> public to exercise rights that are consistent with the nature of the Library
> and consistent with the government's intent in designating the Library
> as a public forum. Other activities need not be tolerated.

*Kreimer*, 958 F.2d at 1262. A public library may refuse service to anyone who

willfully violates a library policy. Mont. Code Ann. § 22-1-311. The relevant

Library Operation Policy in place at the time stated:

> Patron behavior that becomes disruptive to other library users or staff or
> constitutes a public nuisance is not allowed and the person(s) will be
> asked to leave. The library reserves the right to refuse service to anyone
> not complying with established library policies.

(Quoted in doc. 152-10). Contrary to Spreadbury's assertions, the policy does not

state that the Library may only refuse service to a disruptive patron if it has

previously asked the patron to leave. Such an interpretation would require the

Court to insert words in the policy that are not there.

Spreadbury willfully engaged in behavior that became disruptive. On at

-4-

least two occasions prior to the termination of his library privileges, he confronted staff in an intimidating manner. (Docs. 152-1, -7, -8, -9; 158-1, -2.) Additionally, his reference to the Unabomber in a letter to the Library director could reasonably be construed as threatening. (Doc. 152-4.) Willfulness "does not require any intent to violate the law [or] to injure another." Mont. Code Ann. § 1-1-204(5). It is enough that Spreadbury had a "purpose or willingness," *id.*, to confront staff and reference the Unabomber, and a reasonable person would see his behavior as disruptive. Accordingly, Spreadbury violated a Library policy, and the Library could refuse him service so long as it provided him the minimum due process requirement of notice and an opportunity to be heard. *See Hill v. Derrick*, 2006 WL 1620226, *8 (M.D. Pa. 2006).

The Library provided adequate procedural protections. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976) (describing the three factors a court must weigh in determining the adequacy of the process by which a person was deprived of a liberty interest). Based on repeated disruptive incidents that frightened staff, he was given written notice that he was banned from the premises and told the reason why. (Doc. 152-10). He was also afforded an opportunity to be heard. He emailed a member of the Board of Trustees requesting permission to attend a meeting to argue that his rights should be restored, and he submitted a

Reconsideration Request Form to Library staff again demanding his letter be accepted into the Library's collection. (Docs. 152-6, -13, -14). The Library considered and denied his requests for reconsideration, and the Library Board supported the decisions. (Doc. 152-6). Finally, the ban furthered the government's significant interest in maintaining the peaceful character of a library. *Brown v. State of Louisiana*, 383 U.S. 131, 142 (1966) (noting a library is "a place dedicated to quiet, to knowledge, and to beauty"). The Library was not required to follow the specific procedures Spreadbury believes it should have, and it provided sufficient process to protect Spreadbury's limited liberty interest.

"Prohibiting disruptive behavior is perhaps the clearest and most direct way to achieve maximum Library use." *Kreimer*, 958 F.2d at 1263 (upholding a library rule prohibiting disruptive behavior). Unfortunately, Spreadbury has continued to engage in disruptive behavior, resulting in a criminal trespass charge, an order of protection that has been affirmed by the Montana Supreme Court,[3] and his *nolo contendere* plea to felony intimidation.

## B. Qualified Immunity of City Officers

Spreadbury disputes Judge Lynch's finding that Officer Snavely, who

---

[3]Regardless of the status of Spreadbury's library privileges, he cannot come within 600 feet of the Library under the Order of Protection until 2015. (Doc. 152 at 13–14.)

investigated him for criminally trespassing on Library property, is entitled to qualified immunity. (Doc. 257 at 4–6.) He insists there is a clearly established constitutional right not to be investigated for trespass on public property. (*Id.* at 5.) He is incorrect. There is no "clearly established" right to be free from investigation, and the criminal trespass charge was not clearly precluded under Montana law.

There is no constitutional right not to be investigated by law enforcement for suspected violations of the law. *E.g. S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984) (an investigation by the SEC into possible violations of securities laws does not implicate the Due Process or the Sixth Amendment); *Krainski v. Nev. ex rel. Bd. of Regents of Nev. System of Higher Educ.*, 616 F.3d 963, 971 (9th Cir. 2010) (allegations that defamation by a state actor impaired future employment opportunities or caused psychological trauma are insufficient to invoke constitutional protection from being investigated); *Aponte v. Calderon*, 284 F.3d 184, 193 (1st Cir. 2002) ("Investigations alone do not trigger due process rights."); *United States v. Crump*, 934 F.2d 947, 957 (8th Cir. 1991); *United States v. Trayer*, 898 F.2d 805, 808 (D.C. Cir. 1990) ("But, of course, there is no constitutional right to be free of investigation.").

Spreadbury argues that it is not a violation of the law for a member of the

public to be on public land even if he has been banned from the property. Even assuming there is a right not to be investigated for noncriminal conduct, it is not clearly established under Montana law that criminal trespass is inapplicable on public land. "[A] person commits the offense of criminal trespass to property if the person knowingly . . . enters or remains unlawfully in or upon the premises of another." Mont. Code Ann. § 45-6-203(1). "Property of another" includes real property "in which a person other than the offender has an interest that the offender has no authority to defeat or impair, even though the offender may have an interest in the property." § 45-2-101(62). The privilege to enter on the premises of another "may be revoked at any time by personal communication of notice by the landowner or other authorized person." § 45-6-201(1). And as discussed above, a Library is authorized to restrict access to patrons if adequate procedural protections are observed. *Kreimer*, 958 F.2d at 1262.

Here, Spreadbury entered on public Library property—in which other members of the public also have an interest that he has no authority to defeat or impair—after his privilege to do so had been properly revoked by the Library. This conduct satisfies the statutory definition of criminal trespass. The decision in *State v. Blakely* that criminal trespass had not occurred where the property was open to the public is distinguishable from the facts here. 592 P.2d 501, 503

-8-

(Mont. 1979). In that case, the defendant had not been banned from the public property for violating the rules of the public agency responsible for the property. Thus, neither case law nor the criminal trespass statute clearly establishes that a criminal trespass charge is not applicable on public land. Officer Snavely is thus entitled to qualified immunity for his decision to investigate Spreadbury for trespass.

For these reasons and for the reasons discussed by Judge Lynch, all the City officers are entitled to qualified immunity for their actions in this case.

## C.   Malicious Prosecution

Spreadbury reasserts that he was maliciously prosecuted for trespass on public property. (Doc. 257 at 2.) However, he fails to provide any reason to reject Judge Lynch's conclusion that probable cause for the trespassing charge existed as a matter of law, negating the third element of a malicious prosecution claim. *See Plouffe v. Mont. Dept. of Pub. Health & Human Servs.*, 45 P.3d 10, 14 (Mont. 2002). There being no clear error in Judge Lynch's reasoning, the Municipal Defendants are entitled to summary judgment on this claim.

## D.   Negligent and Intentional Infliction of Emotional Distress

Spreadbury also asks this Court to reject Judge Lynch's recommendation to dismiss his claims for negligent and intentional infliction of emotional distress.

(Doc. 257 at 7, 10.)  However, he gives no reason to reject Judge Lynch's

reasoning and does not point to any evidence in the record that would support his

claims.  He merely re-alleges that "stress caused permanent impairment of

Spreadbury's health NIED criteria is met."  (*Id.* at 7.)  Spreadbury has failed to

make the "threshold showing to the court that [his] emotional distress is 'serious'

or "severe.'" *Jacobsen v. Allstate Ins. Co.*, 215 P.3d 649, 663 (Mont. 2009).  Mere

allegations, unsupported by evidence, are insufficient at the summary judgment

stage to create a genuine dispute over a material fact.  Fed. R. Civ. P. 56(c).

## II.  The City's and Library's Objections

### A.  Negligence claims

Spreadbury brought three negligence claims against the City and Library.

He alleges that Officers Snavely and Bruner-Murphy acted negligently in

investigating and preparing police reports concerning accusations that he was

criminally trespassing on Library property and stalking the Library director.

Specifically, he alleges that Snavely should have known that it is not illegal for a

member of the public to be on public property, and that Bruner-Murphy should

have known that Spreadbury did not commit the crime of stalking in part because

Spreadbury has never met the alleged victim.  Spreadbury also alleges the Library

Board, through Chairman Brophy, acted negligently in revoking his right to use

the library.  He alleges that Brophy should have known that Spreadbury was never

asked to leave the Library and did not willfully violate any Library policies, and

that Brophy ignored his written request for reconsideration.

Judge Lynch recommended denying summary judgment as to these claims.

He found the Municipal Defendants had failed to address the elements of breach,

causation, and damages, and he rejected their argument that they did not owe

Spreadbury a duty under Montana's public duty doctrine.  He predicted that the

Montana Supreme Court would not apply the public duty doctrine when a

government agent "is not merely performing a general duty to protect citizens

from private harms but is instead acting affirmatively towards a plaintiff and is,

him or herself, the injurious force that caused harm to the plaintiff." (Doc. 250 at

41.)  Judge Lynch also predicted the Court would conclude "the public duty

doctrine does not protect a law enforcement officer from liability for harm caused

by a negligent criminal investigation as to the subject of the investigation." (Doc.

250 at 42 n. 12.)  He reasoned:

> The public duty doctrine generally deals with situations where a law
> enforcement officer allegedly breaches a general duty to protect the
> public by failing to protect a specific plaintiff against an injury caused
> by a third party or other independent source. In contrast, the public duty
> doctrine is inapplicable where a law enforcement officer is not merely
> performing a general duty to protect citizens from private harms, but is
> instead acting affirmatively towards a plaintiff and is, him or herself, the

injurious force that caused harm to the plaintiff.

(*Id.* at 41 (internal citations omitted).) *See also Jones v. Maryland*, 38 A.3d 333

(Md. 2012); *Liser v. Smith*, 254 F. Supp. 2d 89 (D.D.C. 2003); *Strickland v. U. of*

*N.C. at Wilmington*, 712 S.E.2d 888 (N.C. App. 2011); *Bates v. Doria*, 150 N.E.3d

1025 (Ill. App. Dist. 2 1986).

Assuming without deciding that Judge Lynch is correct that the Municipal

Defendants owed Spreadbury a duty, the facts in the record do not establish what

that duty is or if it was breached. These claims involve a sort of professional

malpractice, requiring a jury to decide what a reasonable Library board or a

reasonable police officer would do in each situation. There is no expert testimony

to establish what duty an officer owes in investigating or reporting on a call for

assistance or what duty a Library owes in revoking a patron's library privileges.

The City and Library are also entitled to summary judgment as to breach.

The evidence underlying the negligence claims is the same as the evidence

underlying Spreadbury's constitutional claims. This evidence was discussed in the

City's and Library's summary judgment briefing and laid out in their Statement of

Undisputed Facts. Spreadbury failed to raise a genuine dispute over any material

fact in his response brief. In their objections before this Court, the City and

Library explained how the facts demonstrate they did not breach a duty, if they

-12-

have one, to Spreadbury. Again, Spreadbury had the opportunity to counter their arguments but failed to do so. *See* Spreadbury's "Response to City, Library Objection to Court Order, Findings Doc. # 250." Accordingly, the issue of breach has been fully briefed and is properly before the Court.

### 1. The Library

There is no evidence to suggest the Library breached any duty toward Spreadbury. The undisputed facts demonstrate Spreadbury engaged in multiple confrontations with staff and, after he had been banned from the Library, with both staff and patrons. Spreadbury requested that the Library maintain a letter he had written to President Obama in its collection. The first time his request was refused by a staffmember, Spreadbury became animated and "a bit scary." (Doc. 152-1.) The staffmember reported the incident to the Library Director. (*Id.*) Spreadbury then wrote a letter to the Library Director again demanding that his letter be placed in the collection. (Doc. 152-4.) In it, he made a veiled reference to the Unabomber:

> "Let me remind you both that in 1995 a 'personal letter' was published and available at national libraries which advocated violence, and condoned murder. The letter ended up being from Lincoln, Montana."

(*Id.*) In response, the Library Director wrote to Spreadbury, again denying his request and explaining that his letter is not authoritative or objective and that other

-13-

avenues are available for Spreadbury to voice his opinions. (Doc. 152-5.) Two

days later, Spreadbury confronted another staffperson at the Library. This time,

his "tirade" was so frightening that the staffmember had to be allowed to go home

to calm down, and she reported the incident to the police. (Doc. 152-1; 158-1, -2.)

Another staffmember who witnessed this "tirade" agreed that Spreadbury's

conduct was "despicable" or "pitiful." (Doc. 152-8.)

Though Spreadbury insists this behavior was not disruptive, it objectively

disrupted the staff's ability to do their work and their sense of safety. The Library

director decided to terminate his Library privileges in accordance with the policy

and Montana Code Annotated § 22-1-311. Spreadbury has not raised any genuine

issue of material fact suggesting the Library acted negligently. His only

arguments concern the legality of the Library's process, which is addressed in the

discussions of due process above and in Judge Lynch's Findings and

Recommendations.

### b. Officer Snavely

The undisputed facts show that Spreadbury was notified by letter on June

11, 2009, that he was no longer allowed in the Library building or on the grounds.

Nonetheless, Spreadbury was seen in the Library gazebo on August 20, 2009. The

Library Director reported that Spreadbury was trespassing, and Officer Snavely

responded to the call.  He spoke with Spreadbury in the gazebo, warned him not to

return to the Library, and took a report.  Spreadbury voluntarily left the premises.

Later that day, Spreadbury met with Officer Snavely again at City Hall and was

again warned not to return to the Library.  However, he returned that very day,[4]

ultimately confronting a patron, Ms. Cassens, demanding to know if she had

talked with the police and her name and phone number.  He yelled at her, making

her and two witnesses nervous.  He left but returned soon after with a video

camera and began filming Ms. Cassens.  When she reported the incident to Library

staff, the Library director again called the police.  Officer Snavely interviewed Ms.

Cassens, two witnesses, and the Director, and prepared another report.  No

evidence suggests that the interviews were conducted negligently or that Officer

Snavely misrepresented or omitted anything he saw or learned in the reports.  He

clearly explained in his report that Spreadbury had been banned from the Library

and identified the premises as the Bitterroot Public Library.

Again, Spreadbury's argument is purely legal—he insists Officer Snavely

"should have known" that it is not possible to criminally trespass on public

property.  However, as discussed above in the discussion of whether Spreadbury's

---

[4]Ms. Cassens reported that Spreadbury may have stayed on the sidewalk during the
confrontation.

constitutional rights were violated, it is not clear under Montana law that criminal

trespass is inapplicable on public land. Moreover, no evidence suggests that

Officer Snavely interfered with the prosecutor's exercise of independent judgment

in reviewing the reports and deciding to press charges.

### c. Officer Bruner-Murphy

The facts found by Judge Lynch in his discussion of whether Officer

Bruner-Murphy committed any constitutional violations also establish that Bruner-

Murphy did not act negligently. The Library Director contacted the police

department to make a complaint that Spreadbury was "stalking" her. She

described his conduct to Bruner-Murphy and provided him several documents

representing the conduct she was complaining of. Bruner-Murphy explained the

procedure for filing for an order of protection and prepared a report based on the

interview and documents. No evidence suggests that Bruner-Murphy

misrepresented or omitted anything in the report, no charges were ever filed

relating to this report, and Spreadbury has alleged no damages relating to the

investigation.

Conclusion

Because the undisputed facts in the record do not establish the relevant

standard of care or that it was breached, the Municipal Defendants are entitled to

-16-

summary judgment as to each of Spreadbury's negligence claims.

## B.    Punitive Damages and Injunctive Relief

Because all of Spreadbury's claims against the Municipal Defendants fail, he is not entitled to injunctive relief or punitive damages.

## III. Conclusion

For the reasons discussed above, IT IS HEREBY ORDERED:

1. Judge Lynch's Findings and Recommendations (doc. 250) are adopted in part and rejected in part based on the additional briefing of the parties.

2. The Municipal Defendants' Motions for Summary Judgment (docs. 148 and 150) are DENIED as moot with respect to Spreadbury's claims for punitive damages because there is no underlying cause of action on which punitive damages could be awarded.  The motions are otherwise GRANTED, and all of Spreadbury's claims against the Municipal Defendants (the Bitterroot Public Library, City of Hamilton, Dr. Robert Brophy, Trista Smith, Nansu Roddy, Jerry Steele, Steve Snavely, Steven Bruner-Murphy, Ryan Oster, Kenneth Bell, and Jennifer Lint) are DISMISSED WITH PREJUDICE.

3. The Municipal Defendants' Motion for Leave to File Supplemental Summary Judgment Motion and Brief (doc. 252) is DENIED as moot.

5. Because no claim remains against the Municipal Defendants, all

-17-

deadlines pertaining to them, including the jury trial scheduled for June 25, 2012, are VACATED.

Dated this ___30th___ day of ___May___ 2012.

Donald W. Molloy, District Judge
United States District Court